## HILL *v.* WOOSTER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF VERMONT.

No. 10.   Argued November 19, 20, 1889.—Decided January 13, 1890.

In a suit in equity, brought under § .4915 of the Revised Statutes, in a Circuit Court of the United States, there was a decree in favor of the plaintiff, that he was entitled to receive a patent for certain claims.   The decision rested solely on the fact that he was the prior inventor, as between

him and the defendant. On appeal by the defendant to this court; *Held*, that this court must consider the question of the patentability of the inventions covered by the claims, and that, as they were not patentable, the decree must be reversed, and the bill be dismissed.

IN EQUITY. The suit was brought under section 4915 of the Revised Statutes of the United States to determine to whom a certain patent, yet to be issued, covering certain improvements in milk-setting apparatus, belonged. Decree in favor of the plaintiff, from which the defendants appealed. The case is stated in the opinion.

*Mr. William Edgar Simons* for appellants.

*Mr. Stephen C. Shurtleff* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the District of Vermont, by Daniel B. Wooster against Samuel Hill, Benjamin B. Prentice, and The Vermont Farm Machine Company, under section 4915 of the Revised Statutes, which reads as follows: "Whenever a patent on application is refused, either by the Commissioner of Patents or by the Supreme Court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases, where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

The substance of the allegations of the bill is as follows:

Wooster, on the 17th of January, 1879, filed in the Patent Office an application for a patent for an "improvement in milk-coolers." The Commissioner of Patents declared an interference between that application and letters patent No. 207,738, granted September 3, 1878, to said Hill and Prentice, for an "improvement in milk-coolers," an interest in which patent had been assigned to the defendant The Vermont Farm Machine Company. Testimony was taken, and priority of invention was adjudged by the Patent Office in favor of Wooster, in respect to the claim in issue in the interference; and Wooster, by a separate application for that purpose, was granted a patent containing that claim, on the 14th of June, 1881, No. 242,805, for an "improvement in milk-coolers." On the 30th of March, 1880, Hill and Prentice filed an application for a patent for an "improvement in milk-setting apparatus." They also, on the 10th of November, 1880, filed an application for a reissue of their patent No. 207,738. Both of the last-mentioned two applications were declared to be in interference with the application of Wooster, of January 17, 1879. Testimony was taken by both parties, and the Commissioner of Patents decided to grant a patent for certain of the claims to Hill and Prentice, or to The Vermont Farm Machine Company as their assignee, and refused to grant a patent for them to Wooster. Four of those claims arose on the application filed by Hill and Prentice on the 30th of March, 1880, and were as follows:

"1. The combination, with a cabinet provided at its top with a cover or lid and having a door in its side, of an ice receptacle located in the upper portion of the cabinet, and an elongated milk receptacle, the upper portion of which is located within the ice receptacle and its discharge conduit arranged to extend below the ice receptacle.

"2. In a milk-cooling apparatus, the combination, with a cabinet or box having its top and side provided with covers or doors, of a vertically elongated milk receptacle provided with a discharge-regulating valve or stop-cock at its lower end, and an ice receptacle having an open top and surrounding the upper portion of the milk receptacle.

" 3. A milk-cooling apparatus consisting essentially of a vertically elongated milk receptacle, provided with a discharge opening at its lower end, an ice receptacle having an open top and surrounding the upper portion of the milk receptacle, and a cabinet having a cover which extends over the milk and ice receptacles, and with a side door for preventing admission of the outer air to the lower portion of the milk receptacle, when desired.

" 4. A milk-cooling apparatus, consisting of a cabinet provided with an upper and lower compartment, an ice receptacle having an open top and located in the upper compartment of the cabinet, a vertically elongated milk receptacle, the upper portion of which is located in the ice receptacle and its lower end constructed to project downward into the lower compartment of the cabinet, and a valve or stop-cock connected with the lower end of the milk receptacle."

The decision against Wooster and in favor of Hill and Prentice covered three other claims, which arose on Hill and Prentice's application for a reissue, filed November 10, 1880; but it is not necessary further to allude to them, as there is no contest in this court in regard to them.

The bill contains the following statement as to the invention of Wooster:

" The object of your orator's invention being to provide a milk-cooler of such construction that a milk receptacle of a depth greater than its width may have its upper portions only subjected to cold, and thus cause the contained milk to rise and descend in reverse vertical currents. The upper strata of milk, being subjected to cold, will part in whole or in part with its cream, and then descend, its place being supplied by an ascending current of warmer milk from the lower portion of the vessel. And, further, to provide the milk-cooler with a combined ventilator and filter, whereby the milk may be thoroughly ventilated. And, further, to provide a milk-cooler with a transparent eduction tube, to be attached to the lower portion of the cooling vessel, whereby the milk can be easily or readily inspected while being drawn from the cooler and the milk and cream accurately separated and deposited in separate vessels."

The bill prays for a decree adjudging Wooster to be the first inventor "of the invention embraced in the claims hereinbefore set forth, and entitled, according to law, to receive a patent for said invention."

The answer of the defendants denies that Wooster was the first inventor of either of the claims marked 1, 2, 3 and 4, and avers that Hill and Prentice were the first inventors thereof, and are entitled to a patent for those claims.

The cause was put at issue by a replication, voluminous proofs were taken, and the case was heard by Judge Wheeler. His opinion is reported as *Wooster* v. *Hill*, 22 Fed. Rep. 830.

In the Patent Office, the examiner of interferences awarded priority of invention to Hill and Prentice, in regard to the above claims 1, 2, 3 and 4. On appeal to the examiners-in-chief by Wooster, they affirmed such decision of the examiner of interferences. On an appeal by Wooster to the Commissioner of Patents, the latter affirmed the decision of the examiners-in-chief, and afterwards denied a motion for a reconsideration of his decision.

The opinion of the Circuit Court discusses the questions involved solely as questions of fact as to priority of invention, as between Wooster on the one side and Hill and Prentice on the other, and states that considerable evidence was produced before the court which was not before the Patent Office. The court was of opinion that Hill and Prentice were the first inventors of an open-box creamery standing on legs, with the lower part of the cans extending through the bottom of the box downward, and the upper part surrounded by water in the box, for cooling the top of the milk in the cans, as shown in the patent No. 207,738, granted to them on September 3, 1878. The "cabinet" mentioned in the four claims before recited applied to a cabinet creamery closed all the way down, but having a door in front, for access to the lower part of the can, in contradistinction to an open-box creamery standing on legs. The court was of opinion, on the evidence, that Wooster was the first inventor "of the cabinet creamery as an improvement upon the box creamery, as that is shown in the patent of Hill and Prentice." It thereupon entered a decree

adjudging that Hill and Prentice were not the original, first and joint inventors of the improvements set forth in the four claims before recited, and that Wooster was the original and first inventor of the improvement called a cabinet creamery, set forth in those four claims, and was entitled to receive a patent therefor, as set forth in his application filed January 17, 1879. From this decree the defendants have appealed to this court.

The provision of section 4915 is that the Circuit Court may adjudge that the applicant "is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear;" and that, if the adjudication is in favor of the right of the applicant, it shall authorize the Commissioner to issue the patent. It necessarily follows that no adjudication can be made in favor of the applicant, unless the alleged invention for which a patent is sought is a patentable invention. The litigation between the parties on this bill cannot be concluded by solely determining an issue as to which of them in fact first made a cabinet creamery. A determination of that issue alone, in favor of the applicant, carrying with it, as it does, authority to the Commissioner to issue a patent to him for the claims in interference, would necessarily give the sanction of the court to the patentability of the invention involved.

The parties to the present suit appear to have been willing to ignore the question as to patentability in the present case, and to have litigated merely the question of priority of invention, on the assumption that the invention was patentable. But neither the Circuit Court nor this court can overlook the question of patentability. The bill claims a patent for what it alleges was invented by Wooster as a patentable invention; and the answer of the defendants is founded upon the view that Hill and Prentice were the first inventors of the improvements covered by the four claims in question, as patentable inventions.

We are of opinion that nothing in those four claims constitutes a patentable invention. A cabinet constitutes an element in each of the combinations covered by the four claims. This

cabinet is nothing more than a boxing or covering in of the open space forming the lower part of the prior open-box creamery standing on legs. In the application of Wooster, filed January 17, 1879, in an amendment filed by him March 29, 1879, he says: "I am aware that long rectangular milk receptacles have been provided with a water-chamber extending around the upper portion thereof; also, that water-coolers have been enclosed within a box or casing, and their upper ends enclosed within an ice receptacle having a perforated bottom; also, that a milk receptacle has been provided with an ice receptacle extending through the centre of the same, and hence I would have it understood that I do not claim the construction above referred to."

In the application of Hill and Prentice, filed March 30, 1880, they say in the specification: "The lower chamber or compartment serves to protect that part of the milk vessel which is in contact with this chamber from free contact with the outer air, preventing the temperature from unduly varying; and it also serves as a suitable place wherein to store butter, milk, or dairy appliances, this being practically a refrigerating chamber."

In the decision of the examiners-in-chief on appeal, made July 12, 1882, they say: "The idea of applying a cooling medium to the top of milk cans while the bottom should be exposed to the ordinary temperature of the dairy-room was old, and Wooster expressly disclaims any broad pretension to such method, and says that he is aware that milk receptacles have been provided with a water-chamber around the upper portion, and that water-coolers have been boxed and their upper parts enclosed in ice receptacles and the lower end perforated, and milk receptacles been provided with an ice receptacle extending through the centre of the same. So, to start with, we find that whatever either has done is merely to improve upon means for more effectually carrying out this mode of treating milk, to obtain the best results in raising and securing cream. As a structure, the cabinet would seem almost anticipated by the water-cooler of which the parties made a double use; but this is not before us, except so far as

showing us to what a limited extent the examiner conceded patentability of matter included in the claims allowed and put in interference." The examiners-in-chief seem, therefore, not to have considered that the question of patentability was before them, but that they were limited to considering the question as to which of the two parties first made the structure in the form in which it was presented.

The examiners-in-chief proceed: "When the parties came to the office they undoubtedly supposed, each for himself, that they had made a great discovery in keeping the top of the milk cool and the bottom warm. So we find that both of them seem to have obtained new light in regard to the state of the art, and, by repeated amendments, came down to quite restricted claims. We now come down to the material matter: Which of the parties devised and first reduced to practice the box, with lid, enclosing the cooler tank, having the elongated can extending through the bottom, etc. The idea of drawing off the milk from the bottom was old, and the glass to afford inspection was old. And which of them conceived of and first reduced to practice the cabinet form, or the above box and tank and can construction, with the lower part of the can also enclosed? It is certainly a very small matter of invention, this enclosing the bottom part, after the enclosing of the cooler tank, and after what has been done in refrigerators and water-coolers."

In the brief of the defendants, who are the appellants here, it is stated that the four claims in question "are confined to a cabinet creamery," and "are simply for adding the lower compartment to a box creamery on legs." We are of opinion that they are entitled to have the decree below reversed, on the ground that it was not a patentable invention to add a lower compartment to a box creamery on legs. The only allusion to this question in the brief for Wooster, the plaintiff and appellee, is the remark that no question is made in the answer but that one party or the other is entitled to a patent, and that, therefore, evidence which does not tend to show which party is entitled to the patent is irrelevant and should be suppressed. This court, however, has repeatedly held that, under the Con-

stitution and the acts of Congress, a person, to be entitled to a patent, must have invented or discovered some' new and useful art, machine, manufacture, or composition of matter, or some new and useful improvement thereof, and that "it is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the Constitution and the statute, amount to an invention or discovery." The cases on this subject are collected in *Thompson* v. *Boisselier*, 114 U. S. 1, 11, 12. To them may be added *Stephenson* v. *Brooklyn Railroad*, 114 U. S. 149; *Yale Lock Co.* v. *Greenleaf*, 117 U. S. 544; *Gardner* v. *Herz*, 118 U. S. 180; *Pomace Holder Co.* v. *Ferguson*, 119 U. S. 335; *Hendy* v. *Miners' Iron Works*, 127 U. S. 370, 375; *Holland* v. *Shipley*, 127 U. S. 396; *Pattee Plow Co.* v. *Kingman*, 129 U. S. 294; *Brown* v. *District of Columbia*, 130 U. S. 87; *Day* v. *Fair Haven and Westville Railway Co.*, *ante*, 98; *Watson* v. *Cincinnati, Indianapolis &c. Railway Co.*, *ante*, 161; *Marchand* v. *Emken*, *ante*, 195; *Royer* v. *Roth*, *ante*, 201.

> *The decree of the Circuit Court is reversed, and the case is remanded to that court with a direction to dismiss the bill, with costs.*