# SOBEY *v.* HOLSCLAW.

PATENTS; INTERFERENCE; APPEAL FROM PRIMARY EXAMINER; CONSTRUCTION OF ISSUES; PRIORITY OF INVENTION; APPEAL; PATENTABILITY; NATURE OF INTERFERENCE PROCEEDINGS.

1. Neither the rules of the Patent Office, nor any section of the Revised Statutes, provide for or permit an appeal from a decision of a Primary Examiner holding that the claims which are the issue of an interference are patentable, and that the senior party had the right to make the claims, when such decision is rendered after the hearing of a motion to dissolve the interference.

2. The issues of an interference are to be construed in the light of the application of the party making the claims, and it is improper for the Commissioner to read into them, for any purpose, limitations not disclosed in such party's application.

3. No award of priority of invention can be made to a junior applicant in interference, unless he overcomes his rival's record date.

4. *Semble,* that the decision of a Primary Examiner as to the patentability of an invention should not be reversed by the Commissioner, unless the error is so gross that it would be a wrong to the public to permit the patent to issue. A mere difference of opinion is not enough.

5. Where, on appeal from a decision of the Commissioner awarding priority of invention, it is assigned as error that he made his decision without first deciding as to the question of patentability, it is sufficient to show that, in making his decision, he adopted the views of the subordinate tribunals of the Patent Office after the question of patentability had been repeatedly raised.

6. This court cannot control the action of the Commissioner of Patents in a discretionary matter, such as the extent of oral argument to be permitted at a hearing of an interference.

7. Although this court will, on an appeal from a decision of the Commissioner awarding priority, refuse to affirm the decision if there clearly appears to be a lack of patentable invention, yet, where the Primary Examiner has held claims to be patentable, and the Examiner

of Interferences and the Examiners-in-Chief have omitted or declined to call the attention of the Commissioner of Patents to the unpatentability of the issue of an interference, or where the Commissioner has declined to review the decision of the Primary Examiner, after his attention has been called to the alleged unpatentability of the issues, the court will hold the question of patentability to be settled. (Following *Hisey* v. *Peters,* 6 App. D. C. 68; *Doyle* v. *McRoberts,* 10 App. D. C. 445; *Luger* v. *Browning,* 21 App. D. C. 201; *Parkes* v. *Lewis,* ante, 1; Distinguishing *Oliver* v. *Felbel,* 20 App. D. C. 262.)

8. There is no statute providing for an appeal to this court from the ruling of the Commissioner of Patents, or of any of the subordinate tribunals, affirming the patentability of a claimed invention. It is only from the decision adverse to the patentability of a claim that an appeal will lie.

9. An appeal to this court in an interference case is not a proceeding in equity, and the provisions of Rev. Stat. sec. 4915 (U. S. Comp. Stat. 1901, p. 3392), providing for relief by a bill in equity where the patent has been finally refused, do not apply. It is a proceeding at law, and, hence, a decision of the Supreme Court of the United States as to the statute referred to does not apply.

10. In interference proceedings this court does not decide whether either party shall receive a patent. The only question presented is: Conceding that there is a patentable invention, which party was the first to invent or discover the same?

No. 352. Patent Appeals. Submitted May 9, 1906. Decided June 6, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. James H. Peirce, Mr. George P. Fisher, Jr.,* and *Mr. Melville Church* for the appellant.

*Mr. Edward T. Fenwick* and *Mr. E. M. Kitchin* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

This case comes to us upon an appeal from the decision of the Commissioner of Patents awarding priority of invention to

Wilford H. Holsclaw of certain improvements in planters, which are set in the following issues:

"1. In a planter, a cultivator and a seed dropper, and a vertically movable bar capable of lifting both said cultivator and the said dropper.

"2. A seed planter, comprising a seed dropping mechanism, a reciprocating standard carrying a furrow opener in front of the same, means for raising and lowering the said standard and furrow opener simultaneously, said means also operating to raise the seed dropping mechanism out of operative position.

"3. A seed planter provided with a reciprocating vertically adjustable standard, anti-friction means for guiding the same in its movement, and yet capable of exerting a pull upon the same, and means engaging the standard for raising and lowering it.

"4 A seed planter provided with a vertically movable seed dropping mechanism, a chute therefor, a soil preparing mechanism, a reciprocating standard carrying the same, a drawbar engaging said standard, and means for adjusting the standard vertically with respect to said drawbar.

"5. A seed planter provided with a reciprocating vertically adjustable standard, anti-friction means for guiding the same in its movements, and means for raising and lowering the said standard.

"6. A planter comprising a rigid frame, pivoted frames carried thereby, a seeder carried by one of said pivoted frames, covering means carried by the other pivoted frame and means for elevating one pivoted frame whereby the pivoted frame carrying the seeder will also be elevated for interrupting the operation of the seeder.

"7. In a seeding machine, the combination of a main frame supported on the carrying wheels, a supplemental frame pivoted to the main frame and extending rearwardly of such pivotal connection, a furrow opener, and a seed box and covering shovels adapted to be elevated when said supplementary frame is elevated, and a sweep supported in advance of said furrow opener and in line therewith.

SOBEY *v.* HOLSCLAW.

"8. In a seed machine, the combination of a main frame, a supplementary frame pivotally connected therewith, and free to swing vertically therein, a furrow opener, a seed box adapted to be moved when the frame is swung upon its pivot, covering shovels carried by said supplementary frame, and a sweep arranged in advance of the furrow opener."

The record discloses that Holsclaw, the senior party, filed his application September 10, 1903, while that of Sobey, the junior party, was not filed until June 22, 1904. The issues are claims made by Holsclaw and suggested by the Primary Examiner to Sobey, who filed an amendment to his application incorporated therein the suggested claims as claims 44 to 51 inclusive. In filing this amendment Sobey stated that he did so, "without prejudice to our right to make motion for dissolution of the interference, when declared, should careful search and study show that the proposed claims (1) are unpatentable for lack of novelty, or (2) raise no real conflict, as applied to the rival devices taken in conjunction with other inventions existing prior."

The interference having been declared, and the preliminary statements filed and opened, it was found that Sobey had failed to overcome Holsclaw's record date, so that the Examiner of Interferences, in conformity with the rules of the Patent Office thereto pertaining, notified the parties that, unless Sobey should show good and sufficient cause before a given date, judgment on the record would be rendered against him.

Thereupon Sobey moved to dissolve the interference upon the grounds, that no interference in fact existed, irregularity in its declaration which would preclude a proper determination of the question of priority, that the issues were unpatentable, and that Holsclaw had no right to make the claims. The motion was referred to and heard by the Primary Examiner, who filed an opinion specifically passing upon each ground upon which the motion was based. He denied the motion save as to count 5, which he held to be unpatentable in view of a prior patent. From this decision an appeal was taken to the Commissioner of Patents upon ground stated in the latter's opinion, which also

gives his reasons for affirming the decision of the Primary Examiner. The Commissioner said: "The grounds upon which this appeal is taken are, that the Examiner erred in holding that there has been no such irregularity in declaring the interference as to preclude the proper determination of the question of priority, and that interference in fact exists between the inventions claimed in the respective applications. Considering the question of interference in fact, it is found that both inventions relate to improvements in the type of agricultural implements known as planters. The machines disclosed by the respective parties to this interference, though differing in details of construction, are practically identical as to their main features, and they are used to accomplish the same purpose. The inventions defined in the counts of the issue cover the general combinations of elements, and are not limited to the specific details which constitute the differences between the machines. The Examiner, in his decision, has set forth very specifically the structures of the two machines, and has also correctly stated the functions which are accomplished in operating the mechanisms claimed. A comparison of the counts of the issue with the disclosures in both applications makes it clear that these counts have the same meaning when applied to each structure, and, consequently, there is an interference in fact. The reasons for this conclusion have been clearly stated by the Examiner in his decision, and to state them again would be mere repetition of what has already been well said. No irregularity appears in the declaration of the interference, and none has been pointed out by the appellant."

It will be noted that no appeal was taken from the Examiner's decision holding the issues, save the fifth, to be patentable, and that Holsclaw had a right to make the claims. Neither the rules of the Patent Office, nor any section of the Revised Statutes, provide for, nor permit, such appeals. *Allen* v. *United States,* 26 App. D. C. 8.

The interference proceedings were thereupon continued by the Examiner of Interferences, who awarded priority of invention of all of the issues, save the one formerly declared unpatentable, to Holsclaw. Thereupon Sobey moved the Examiner of.

Interferences to vacate the judgment in Holsclaw's favor, to suspend the proceedings, and to direct the attention of the Commissioner of Patents to certain reasons why the interference should be dissolved. These reasons again attacked the patentability of the issues. This motion was stated to be made under the authority of Patent Office Rule 126, which, in substance, provides "that the Examiner of Interferences, or the Board of Examiners-in-Chief, either before or in their decision on the question of priority, may direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which, in their opinion, establishes the fact that no interference exists, or that there has been irregularity in declaring the same, or which amounts to a statutory bar to the grant of a patent to either of the parties for the claim or claims in interference."

The Interference Examiner, in denying the motion, said:

"The matters now set up as anticipating the issue were not called to the attention of the Examiner of Interferences before the decision on priority, and not until the limit of appeal from said decision had nearly expired. The authority of the Examiner to act upon these matters under the rule is therefore doubtful. However, no useful purpose would be accomplished by the grant of the present motion, since Sobey, in order to preserve his rights, must take his appeal on the question of priority to the Board of Examiners-in-Chief. He may, under the rule, direct the attention of the Examiners-in-Chief to the matters alleged to anticipate the issue, thus preventing useless delay."

Appeal was then taken by Sobey to the Examiners-in-Chief from the Interference Examiner's decision awarding priority to Holsclaw. In his reasons of appeal he set forth that the Examiner of Interferences erred in awarding priority to Holsclaw because the issues were unpatentable, and clearly so when construed to cover Sobey's construction. He further urged that the Examiner erred in failing to direct the Commissioner's attention, under Rule 126, to the unpatentability of the issues. At the time of taking this appeal he filed a petition asking them before any decision upon the question of priority to call the atten-

tion of the Commissioner of Patents to the claimed fact that a statutory bar (unpatentability of the issues) existed to the issue of a patent to either party.

The Examiners-in-Chief, after a hearing, rendered a decision holding that they did not have jurisdiction to consider any of the questions raised by the assignment of errors save that of priority. They said that the question of the patentability of the claims was *res judicata* for them at the hearing of the question of priority of invention, and that the Commissioner had settled the question of interference in fact.

In referring to the petition asking them to direct the attention of the Commissioner to the alleged unpatentability of the issues as provided by Rule 126, they said:

"Rule 126 reads: 'Examiner of Interference or the Examiners-in-Chief may, either before or in their decision on the question of priority, * * * direct the attention of the Commissioner * * * to any ground for rejection of the claims which are the counts of the issue.'"

It is not necessary to decide whether the rule authorized the Examiners-in-Chief to direct the attention of the Commissioner to their opinion on such a matter, and to refrain from deciding the question of priority of invention. It is enough to say that it is left to their discretion whether or not they will call the attention of the Commissioner to any such matter, and that their opinion should be certain and beyond doubt in order to enable them to so act.

We have considered the question which we have been petitioned to consider, in view of the patents cited by Sobey to sustain his contention against the claim, and of the decision of the Principal Examiner, and decline to express the opinion that the counts of the issue are unpatentable.

Appeal was duly taken to the Commissioner of Patents, and at the same time he was petitioned to dissolve the interference because the issues were anticipated by the patents of the prior art, and because they could only be held patentable by reading into them features of construction not found in Holsclaw's application, but disclosed in Sobey's. In passing it may be said

that, as the issues are claims originally made by Holsclaw, and therefore, as we have repeatedly held, in such case the issues are to be construed in the light of the application of the party making them, it would be manifestly improper for the Commissioner of Patents to read into them, for any purpose, limitations not disclosed in the application of the party first making the claims. Holsclaw's attorneys moved to dismiss the petition.

The Commissioner affirmed the decision of the Examiners-in-Chief awarding priority of invention to Holsclaw, and at the same time dismissed Sobey's petition for reasons stated in his opinion deciding the question of priority.

The Commissioner, in reviewing the case, said: "It appears that the dates of invention alleged by Sobey in his preliminary statement are insufficient to overcome the case established for Holsclaw by the filing date of his application, and that Sobey can therefore make no contest upon the question of priority of invention. That he can make no further contest upon priority is conceded by Sobey, who admittedly took his appeal to the Examiners-in-Chief from the decision of the Examiner of Interferences upon priority of invention, and also the present appeal, for the sole purpose of attacking the patentability of the issue. The regular procedure for raising the question of patentability by a party in an interference proceeding is by motion under Rules 114 and 122. Such motion was made by Sobey, and his contention that the issues are not patentable was considered thereon by the Primary Examiner in connection with the same references upon which Sobey seeks to present this contention here. The Primary Examiner held upon this *inter partes* consideration, as he had previously held in the *ex parte* prosecution of the applications, that the issues were patentable. Well-established policy, expressed in Rule 124, denies the right of appeal from decisions affirming the patentability of claims. It would seem, in view of this policy and rule, and in view of Sobey's preliminary statement, that Sobey's opportunity to contest the right of Holsclaw to a patent upon the claims in issue was at an end when this decision of the Primary Examiner appeared. However, Rule 126 provides that the Examiners-in-Chief may,

either before or in their decision on the question of priority, direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which, in their opinion, amounts to a statutory bar to the grant of a patent to either of the parties of the claims in interference. Sobey petitioned the Examiners-in-Chief to take action under this rule, by calling attention to the fact that, in their opinion, the claims are not patentable. In view of this petition, the Examiners-in-Chief did include in their decision upon priority the following statement:

" 'We have considered the question which we have been petitioned to consider, in view of the patents cited by Sobey to sustain his contention against the claim, and of the decision of the Principal Examiner, and decline to express the opinion that the counts of the issue are unpatentable.'

"It is clear to my mind that this case is before me upon the single question of the priority of the parties with regard to the subject-matter of the issue, and that, Sobey having conceded that he is subsequent to Holsclaw on the possession of this matter, there is nothing for me to do here but affirm the decision of the Examiners-in-Chief in favor of Holsclaw. It is urged that there can be no proper decision upon priority of invention until the claims in controversy have been determined to be patentable. This contention does not, however, appear to have any application in the present case, for the claims in issue have been regularly determined to be patentable, and the determination was a final one, so far as the necessity for a basis for determination of priority is concerned."

We have thus fully set forth the proceedings in the Patent Office because they show that the questions of patentability of the issues and of the proper construction to be given them were repeatedly called to the attention of the various tribunals and as fully considered as the rules governing the proceedings in that office permit. These rules are presumably made to conform to the patent statutes, have been in force for many years, and have been found, in the main, to give satisfactory results. They show that the decision of the Primary Examiner, that the claims

which are the issues of an interference are patentable, and that all the parties to the interference have a right to make them, is final when rendered after the hearing of a motion to dissolve the interference. Furthermore, the rules provide for the further consideration of the question of patentability.

In the appeal taken to this court from the decision of the Commissioner of Patents awarding priority of invention to Holsclaw it is asserted on behalf of Sobey that the following errors were committed:

"1. In deciding priority of invention in favor of Wilford H. Holsclaw.

"2. In deciding upon the question of priority of invention without first determining and deciding that the subject-matter of the interference was a patentable subject-matter.

"3. In not dissolving the interference (a) because of the lack of patentability in the subject-matter thereof, and (b) because no interference in fact exists between the parties.

"4. In refusing to consider or decide upon the patentability of the subject-matter of the interference.

"5. In refusing to permit counsel for William Sobey to be heard in support of the contention on behalf of Sobey that the subject-matter of the interference is not a patentable subject-matter."

That the first assigned error is not well founded cannot be gainsaid, provided the issues set out a patentable invention and show rival claimants of it. Sobey failed to overcome Holsclaw's record date, and, so failing, no award of priority can be made in his favor.

The second alleged error does not seem to us well founded for the reason that the question of patentability had been affirmatively decided by the officer expressly authorized by law to decide that question, from whose favorable decision no right of direct appeal is given by the patent statutes, or the rules of the Patent Office, lawfully promulgated. The Primary Examiners, who are given statutory authority to decide questions of patentability, are under the supervision of the Commissioner; and it would seem to be not only his right, but his duty, to correct any manifest

error committed by any of the Primary Examiners relative to the patentability of a supposed invention, or of the right of an applicant to claim it, whenever such error was called to his attention. To warrant any action on his part in such a case, the error must, we think, be so gross that it would be a wrong to the public to permit a patent to issue. It manifestly should not be based upon a mere difference of opinion. The rules of the Patent Office, as we have seen, provide means by which the Examiner of Interferences and the Examiners-in-Chief can, in an interference proceeding, express their opinion upon the question of the patentability of the issues of an interference and upon kindred questions. In the case at bar not only did the Primary Examiner pass upon the question of patentability and of the right of Holsclaw to make the claims in controversy, *ex parte,* but also in *inter partes* proceedings. Furthermore the Examiner of Interferences and the Examiners-in-Chief had their attention called to these questions, and, in declining to call the attention of the Commissioner of Patents to the alleged unpatentability of the issues, they, in effect, held them to be patentable. We think all the proceedings prove that the Commissioner was so far satisfied of the patentability of the issues that he to all intents and purposes did decide that there was a patentable invention involved in the interference. He says: "The claims in issue have been regularly determined to be patentable, and the determination was a final one, so far as the necessity for a basis for determination of priority is concerned." In view of this statement, and of the proceedings in the office, we are not prepared to say that the Commissioner did not to his own satisfaction determine that there was a patentable subject-matter. He adopted the views of the subordinate tribunals of the office after the question of patentability had been repeatedly raised, and, in so doing, he determined the question of a patentable subject-matter so far as was necessary in this proceeding. These views dispose, also, of the fourth alleged error. Of the fifth it need only be said that we have no power over the Commissioner in such a proceeding as this to hold that he has committed an error, for which a case should be reversed, because of a claim that he

has refused to permit counsel to be heard in support of a given contention. The method of procedure upon a hearing in an interference proceeding is fixed by rules, or is within the discretion of the Commissioner, and a review, if any could be had, would be by some proceeding other than by the ordinary appeal. We cannot control his action in a discretionary matter such as the extent of oral argument he will permit at a hearing of an interference; certainly we cannot, on appeal from his decision awarding priority of invention.

This leaves for consideration the question raised by the third assignment of error. We are asked to reverse the Commissioner because he refused to dissolve the interference for the reason that the issues are not patentable, and because no interference in fact exists between the parties. In this connection, it becomes necessary to consider to what extent we are called upon, or bound, to review the action of the Patent Office tribunals upon these, or analogous, findings.

The question presented to us is not a new one. Unsuccessful parties to interferences have urged us to re-examine about every question that has been litigated in the Patent Office during the course of interference proceedings. It will be sufficient to refer to a few of the cases illustrating the view this court has taken of questions the same, and similar, to those here presented.

In *Hisey* v. *Peters,* 6 App. D. C. 68, where it was urged that the interference did not present a patentable invention, Chief Justice Alvey, delivering the opinion of the court, said: "The question of patentability of the claim for invention was referred to and passed upon by the Primary Examiner in the Patent Office, who is the expert as to the state of the art involved; and it was not until that examination was had and favorably reported that the interference was or could be declared. The appellant, making claim for an alleged patentable invention, is not to be heard to urge nonpatentability of his claim after it has been placed in interference with another claim. He is effectually estopped on that question by reason of his own affirmative assertion that his claim is patentable; and, if his own claim is patentable, that with which it would interfere may be equally

so, if priority of invention be shown. Moreover, the rights of appeal in case of the refusal of a patent upon the ground of nonpatentability of the claim, and refusal of a patent because of interference with a prior right of invention, are distinct rights, and the latter does not involve the former. This is clearly indicated in the Revised Statutes of the United States, sec. 4911 [U. S. Comp. Stat. 1901, p. 3391], and in sec. 9 of the act of Congress of February 9, 1893, providing for the organization of this court."

In *Doyle* v. *McRoberts,* 10 App. D. C. 445, Mr. Justice Hagner, of the supreme court of the District of Columbia, sitting in the place of Chief Justice Alvey and delivering the opinion of the court, said: "In our opinion, it is not competent for this court, in an interference proceeding, to abandon the question of priority, and pass upon the patentability of the alleged invention. This was decided as far back as 1875 by the supreme court in general term, *United States ex rel. Bigelow* v. *Thacher,* 2 MacArth. 24, where the petitioner in interference asked for the vacation of the patent upon the ground that the inventor had abandoned his invention to public uses. In *Hisey* v. *Peters,* 6 App. D. C. 70, the identical motion interposed here was made, and was overruled upon the ground that the applicant was effectually estopped to dispute the patentability of the invention by reason of his own affirmative assertions that his claim was patentable. See also *United States ex rel. Brodie* v. *Seymour,* 25 Wash. L. Rep. 183. But it is insisted that, under the authority of *Hill* v. *Wooster,* 132 U. S. 694, 33 L. ed. 503, 10 Sup. Ct. Rep. 228, the Supreme Court has settled the competency of this court to sustain this claim. That decision has no relevancy to a case like the present. Section 52 of the Patent Office act of July, 1870 (U. S. Rev. Stat. Sec. 4915 [U. S. Comp. Stat. 1901, p. 3392]), provides that, 'whenever a patent or application is refused, either by the Commissioner of Patents, or by the supreme court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity, and the court, having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that

such applicant is entitled, according to law, to receive a patent for his invention as specified in his claim, * * * as the facts in the case may appear, and such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent, etc.' It was in a proceeding under this special statute that the supreme court held an equity judge was obliged, under the language of the act, to consider the patentability of the invention covered by the claim, and, if he should find it not patentable, should deny the application. Such a provision is in entire sympathy with the general principles of equity which refuses to decree in favor of the most specious of two applicants under a claim of an illicit character. But the present is not a proceeding in a court of equity; nor is it an application for the issue of a patent under the circumstances recited in the statute. It is a proceeding as at law, and under altogether different conditions, and, hence, the decision can have no application to the matter, before us."

In *Oliver* v. *Felbel,* 20 App. D. C. 262, Mr. Justice Morris, speaking for the court, said: "In the sense of the patent law, there can be no interference unless there is patentable invention and there are rival claimants of it. Patentability of the invention or device is a necessary prerequisite to a declaration of interference; and the patentability of an invention, in controversy, except under some extraordinary circumstances, is not an open question before us."

In that case there had been "no final and definite adjudication of patentability." The Examiners-in-Chief were of the opinion that the claim in issue was not patentable. The Commissioner had not acted on the question of patentability thus called to his attention, but had reserved it for the consideration of the Primary Examiner after the question of priority should be finally decided. It was held that, as the question of patentability had not been finally decided, the cause as presented was in effect a moot cause. Notwithstanding this, the court assumed that the question of patentability had been definitely decided, and expressed an opinion on the merits.

In *Luger* v. *Browning,* 21 App. D. C. 201, in connection with

the appeal from the Commissioner's decision on the question of priority, a motion was made to remand the proceeding to the Commissioner for a final determination of the question of patentability. That motion was denied, and the court distinguished the case from that of *Oliver* v. *Felbel, supra,* saying: "But we have repeatedly held that the question of patentability in general is not open in this court in interference proceedings. And, so far as concerns the question of the reservation of the question of patentability of the invention, and the application of the case of *Oliver* v. *Felbel,* we find no such reservation in the present case as there was in that of *Oliver* v. *Felbel.* There the Board of Examiners had expressed the opinion that the subject-matter in issue was not patentable; and the Commissioner, in his decision, expressly reserved that question for future consideration by the Primary Examiner when the case should go back to him. No such conditions appear in the present case. In the brief submitted by the appellant before the Commission or the appellant suggested some new references on the question of the patentability of the invention. The Commissioner, properly, as it would seem, declined to consider them; and directed that the Primary Examiner should consider them, when the appellee's application should come before him again after the conclusion of the interference. We cannot hold that this amounted to a reservation of the question of patentability under the ruling in the case of *Oliver* v. *Felbel.* The contents of the references are not disclosed; it is not shown that they are material. The Commissioner has expressed no opinion in regard to them; and a mere suggestion by a party in interference, to the effect that new references brought forward before the Commissioner for the first time will show want of patentable novelty in the subject-matter of controversy, is not the equivalent of a reservation of the question of patentability by the Commissioner. The motion to remand the cause, therefore, for the determination of this question, cannot be allowed."

In *Allen* v. *United States,* 26 App. D. C. 8, which came before us on appeal from a decision of the supreme court of the District of Columbia directing the issue of a writ of mandamus

to the Commissioner of Patents commanding him to direct the Examiners-in-Chief to take jurisdiction of an appeal taken by Lowry from a ruling of the Primary Examiner denying Lowry's motion to dissolve an interference on the ground that his adversary had no right to make the claim because his application disclosed an inoperative device, we reversed the court below, and held that such a motion was not applicable. We held that, whatever right a party to an interference had to contest the right of his adversary to make an interfering claim, such right, if any, was reviewable, if at all, upon the final decision of the question of priority.

In *Podlesak* v. *McInnerney,* 26 App. D. C. 399, we remanded an interference to the Commissioner of Patents for further consideration of the question of identity of invention. We considered the case as being one out of the ordinary, and felt constrained, in view of certain matters called to our attention, and which apparently had not been considered by the Commissioner, to take such action. We said: "We find that the question of appellee's right to make the claim has received the consideration of the Primary Examiner, of the Examiners-in-Chief, and of the Commissioner. Where a question such as this has been fully considered by them, and all have concurred in finding a party to an interference has the right to make a claim which is the same as the count of the issue of an interference, their concurrent finding should not be lightly disturbed, and will be ordinarily considered by this court as conclusive. In an *ex parte* case the decision of a Primary Examiner that a party has a right to make a claim, is final, unless for good cause shown the Commissioner, under his supervisory powers, takes jurisdiction to review the question. It is generally left to courts in a suit brought after the issue of the patent, for infringement of a claim thus allowed, to determine whether the patentee ever had a right to make the claim. If, however, an interference, involving such claim, be instituted, the rules of the Patent Office provide for an examination by the Primary Examiner of the question of the right of either party to make the claim. If his decision be in the affirmative, the rules do not provide for an

appeal to the Examiners-in-Chief.   In *Allen* v. *United States,* 26 App. D. C. 8, this court held that where such a decision was rendered by the Primary Examiner on a motion to dissolve no appeal would lie.   It was there said that the court had reviewed other ancillary questions when they properly came before it on appeal from final judgments awarding priority of invention. The question of the right of a party to make a claim goes to the very foundation of an interference, for, if the party has not such right, the interference falls.   If it be incorrectly held that such party has a right to make the claim, priority may be award-ed to him, and his adversary be deprived of a substantial right in that he is not given a claim where he necessarily is the prior inventor, his adversary never having made the invention.   Mani-festly that question should not be finally determined by the Primary Examiner who originally declared the interference. We therefore take the jurisdiction to determine that question in this case as an ancillary question to be considered in awarding priority of invention.   Where, however, three tribunals of the Patent Office have concurred in answering the question in the affirmative, as they have in this case, we shall follow them, un-less a manifest error has been committed."

In *Parkes* v. *Lewis, ante,* 1, we have again held that the question of patentability will not ordinarily be reviewed in this court.

In so holding we must not be understood as deciding that there can be an interference without there being a patentable in-vention, or that, should we be satisfied that there was no patent-able invention involved, we should make an award of priority. It would be our manifest duty to remand an interference to the Commissioner of Patents, or, at least, call his attention to the fact, whenever it is shown that there is a bar to the issue of a patent to both parties to an interference.   But, where the Pri-mary Examiner has held claims to be patentable, and the Ex-aminer of Interferences and the Examiners-in-Chief have omit-ted or declined to call the attention of the Commissioner of Patents to the unpatentability of the issue of an interference, or where the Commissioner has declined to review the decision

of the Primary Examiner after his attention has been called to the alleged unpatentability of the issues, we are of the opinion that, except in an extraordinary case, we should hold the question of patentability to be settled. The statute does not provide for an appeal to this court from a ruling by the Commissioner of Patents, or of any of the subordinate tribunals, affirming the patentability of a claimed invention. It is only from a decision adverse to the patentability of a claim that an appeal will lie to this court. U. S. Rev. Stat. sec. 4911 (U. S. Comp. Stat. 1901, p. 3391) ; sec. 9 of the act of February 9, 1893, establishing this court.

It is, however, strenuously urged that the proceeding authorized by section 4915 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3392), which provides for relief by bill in equity where a patent has been finally refused, is sufficiently analogous to an appeal like the present to warrant, and even require, this court to consider, upon its own motion, the question of patentability. We cannot agree with this contention. The proceedings are quite different. One is a proceeding in equity, the other at law. The proceeding under section 4915 will only be open to the parties to this interference when a patent shall finally be refused to one of them because he shall fail to prove that his inventive act was earlier than that of his successful adversary, or for any other reason. Then, and not till then, can he avail himself of the provision of the section, and not till then will the case of *Hill* v. *Wooster,* 132 U. S. 693, 33 L. ed. 502, 10 Sup. Ct. Rep. 228, be controlling.

In interferences we do not determine whether either party shall receive a patent. The question presented to us is, conceding that there is a patentable invention, Which party was the one first to invent or discover the same ? When an interference is returned to the Patent Office after we have decided the question of priority, it is within the power of the Commissioner of Patents to withhold a patent from the successful interferant. In such case, by an orderly system of appeals provided by the statute, the action of the Commissioner of Patents may be reviewed on an *ex parte* appeal. It is only on such appeals that we can de-

cide that a patent shall or shall not issue. Appeals frequently come to this court in *ex parte* cases where some claims have been allowed and others refused. The appeal is only before us to consider the correctness of the Commissioner's decision in disallowing the appealed claims. We may doubt the patentability of the allowed claims, but are without power to act. So, in interferences we may doubt the patentability of the issues; but we find no provision in the statute warranting us in overruling the deliberate decision of the Patent Office because of any such mere doubt. Authority to grant patents is vested in the Commissioner of Patents. If he errs and grants an invalid patent, his error is corrected by the court whenever the validity of the patent is questioned.

In cases such as the one at bar, where the patentability of the claims which are the issues of an interference has been attacked in the Patent Office, and alleged invalidity has been repeatedly called to the attention of its officers authorized and required by the statutes and rules to consider the subject, we think their conclusion should, except, perhaps, in extraordinary cases, be held controlling upon us in interference cases where we are called upon to determine which of two or more parties first made the invention which they are claiming. Any doubt we may have should be resolved in favor of the correctness of the finding that there is a patentable invention involved in the interference. Especially so when the alleged invalidity is based upon the prior art.

We do not feel warranted in disturbing the rulings of the Commissioner of Patents, and those of the subordinate tribunals which have considered this case, and we therefore affirm the decision of the Commissioner of Patents awarding priority of invention to Holsclaw.

Let this opinion, and the proceedings of the court in the premises, be certified to the Commissioner of Patents according to law.                                          *Affirmed.*