## CASCO PRODUCTS CORPORATION v. ZAIGER.

### SAME v. SIGNAL MFG. CO., Inc.
### Nos. 4025, 4026.

District Court, D. Massachusetts.
July 27, 1936.

James A. Brickett, of Boston, Mass., Thomas J. Byrne and Cooper, Kerr & Dunham, all of New York City, and John K. Carter, of Boston, Mass., for plaintiff.

Nathan Heard, Frederick A. Tennant, and Heard, Smith & Tennant, all of Boston, Mass., for defendants.

BREWSTER, District Judge.

The two suits above entitled were tried together. In each suit the defendant is charged with infringement of a single patent owned by the plaintiff. This patent is U. S. No. 1,754,669, issued to Joseph H. Cohen. The defenses are noninvention, anticipation, and noninfringement.

### Statement of Facts.

1. On his application filed August 28, 1925, letters patent of the United States, No. 1,754,669 issued to Joseph H. Cohen on April 15, 1930. This invention relates to a heating device, adapted to be applied to windshields of automobiles to prevent the formation of ice and the condensation of moisture on the glass of the windshield. It illustrates a narrow, elongated metal casing containing an electric heating element with the casing held in place on the windshield of an automobile by two rubber vacuum cups, one at each end. The patent explains that the heating element directs the heat against a small portion of glass of the windshield covered by the casing, and that conducted heat over a wider area melts the snow and ice on the windshield. It is claimed for the device that it is so small as not to interfere with the vision of the operator of the car. The patent grants eight claims. Of these claims 1, 2, 3, and 8 are involved in this suit.

Claim No. 1 is the most comprehensive and attempts to cover broadly the idea of detachably securing by suction means a heater of any type to a glass window on a vehicle. It does not so well illustrate the invention as claim 3, which is as follows:

"A heating device for glass windows of motor vehicles comprising a casing, suction cups adapted to attach the casing to the glass of such windows, and a heating unit within said casing, the latter having flexible portions adapted to yieldably engage the glass and confine the heat in the casing to the portion of the glass covered by the same."

In claim 8 an electrical heating element is specified and provides that the casing shall perform the function of reflecting the heat against the windshield and also includes the means of attaching by vacuum cups.

2. From the file wrapper it appears that Cohen met with considerable opposition in the Patent Office in establishing claims 1, 2, and 3, which were claims 2, 10, and 14 in his application. They were repeatedly rejected as not involving invention over Schonger, U.S.No.1,228,482 (1917), in view of Krafft, U.S.No.1,119,177 (1914), and claim 3 was rejected on Murphy, U.S.No. 1,378,604 (1921).

These claims, however, were allowed after they had been finally rejected, following interference proceedings, and after claim 1 had been limited to "suction" means for detachably securing the heater to the windshield.

Claim 8 (originally claim 22) was added for purposes of declaring an interference with Larimore, U.S.No.1,704,897 (March 12, 1929), and was never questioned by the patent examiner.

In urging claim 3 and other claims which were never granted, Cohen's attorney laid particular stress upon the difference between Cohen's invention and the glass type heaters, such as Murphy showed, and asserted that this type of glass heater involved an entirely different principle from Cohen's.

The continued rejection of claims 1, 2, and 3 was based upon the opinion of the Examiner that invention was not involved in the use of vacuum cups as means for attaching a heating element to the windshield. Cohen was not the first to disclose a heater of relatively small dimensions, operating on exactly the principle of conducted heat, which Cohen emphasized. He was, in this respect, anticipated not only by Schonger, but by Telfer, U.S.No.1,523,312 (1925), on application filed December 22, 1923, and if these claims are to be given the scope for which plaintiff now contends,

so as to include the glass type, he was anticipated with respect to his heating elements, not only by Murphy, but by Le Blanc, U.S.No.732,087 (1903); Walter, U. S.No.973,089 (1910); Hassel et al., U.S. No.1,092,526 (1914), and British Patent to Stubbs, No.164,435 (1920). The heaters shown in these patents were all designed to prevent accumulation of snow or condensation of moisture on the windshields of automobiles. They were attached to the windshield by different means. None of them used Vacuum cups or suction means.

3. It is common knowledge that vacuum or suction cups have, for many years prior to 1925, been used to attach various devices to glass surfaces. Ten patents are in evidence, issued between 1888 and 1920, which show how vacuum cups were utilized to suspend articles from glass surfaces. Nine other patents are cited, showing use of cups for suspending articles from windshields of automobiles. Five of them relate to glare shields attached to windshields. Of these, those that suggest the use of two cups, one at either end of the glass shield, are Downing, U.S.No.1,468,197 (1923) and 1,532,308 (application filed February 28, 1924); Midgley, U.S.No.1,530,784 (application filed May 8, 1924). Still other patents were in evidence establishing the use of suction means and vacuum cups, for the purpose of attaching to the windshields devices for protection against snow and sleet. Krafft, cited in the Patent Office, shows an attachment "so constructed and arranged that it may be readily attached and detached." Krafft's employs a "plurality of suckers." In Leighty & Krafft, U.S.No. 1,186,010 (1916) a collapsible storm shield is provided with vacuum cups as means detachably securing the shield to the windshield of an automobile. Eibye, in his patent U.S.No.1,403,545 (1922), adopts the same means for attaching his windshield wiper as does Meadows in U.S.No.1,467,766 (1923) to secure his shade for windshields. No patent or device earlier than Cohen is in evidence which uses vacuum cups to hold windshield heaters or defrosters if Cohen be given January, 1925, as the date of his invention. If, on the other hand, his filing date of August 28, 1925, is the effective date, Bergdoll, U.S.No.1,565,-046 (application filed April 6, 1925) may be cited upon the heating device, and Reed, U.S.No.1,635,906 (application filed March 21, 1925) and Will, U.S.No.1,694,676 (application filed March 21, 1925) on the use

of vacuum cups to hold defrosters on the glass of the windshield. Upon claim 8, defendants have cited Burmeister, U.S.No. 1,243,703 (1917); Fagen, U.S.No.1,370,955 (1921); La Perle, U.S.No.1,446,849 (1923) in addition to Walter, Schonger, Murphy, and Telfer, to show that the idea of directing the heat by reflectors at the side of the heating element was old in the patented art. I find this to be the fact. It is not deemed necessary to enlarge upon those patents.

4. In these cases evidence was introduced respecting a windshield defroster, advertised and sold by the Wetmore-Savage Company long prior to the date of Cohen's disclosure, and which showed an antifreezing device for automobile windshields, comprising a heater and means for detachably securing the heater to the glass of the window. The attaching means were not, however, vacuum cups.

5. On the question of Cohen's date of invention, the evidence establishes beyond doubt that as early as January 13, 1925, Cohen submitted to his attorney a rough sketch of his ideas relative to a windshield heater, and that by February 8, 1925, drawings had been prepared similar to those accompanying his application which was not filed until August 28, 1925. In the meantime, the attorney's associate in Washington searched the records in the Patent Office, but nothing further was done toward reduction to practice prior to filing the application. No model was disclosed prior to that time.

6. The plaintiffs began in 1930 to manufacture and sell in quantities windshield heaters of the glass type, so-called, which structurally differ quite materially from that shown in Cohen's patent, but which no doubt come within the scope of the claims in issue, if these claims are to be given the broad construction now urged but disavowed when the patent was pending. This type consists of a metal frame carrying a glass panel; resistance wires running across the frame for the heating element; a sealing strip to contact the glass of the windshield, and vacuum cups at the corners as attaching means.

It was not until 1931 that plaintiff put on the market the so-called bar type which is based on the Cohen patent. During the period 1930 to March 1, 1936, inclusive, it has sold more of the glass type than the bar type. Beginning in 1934, it manufactured glass type without any sealing strip.

During the above period of six years and two months, plaintiff has manufactured and sold 1,121,608 units of the glass type. According to advertising matter, issued by plaintiff, this glass type is claimed to have the protection of seven United States patents, including Murphy, No.1,378,604; Holzhauer, No.1,721,663, and Steinman, Reissue No.17,821, all owned by Holzhauer Products Corporation and held invalid in Holzhauer Products Corporation v. Max Zaiger (Holzhauer Products Corporation v. Signal Manufacturing Co.) (D.C.) 15 F. Supp. 1006, in an opinion this day filed.

From 1931 to March 1, 1936, inclusive, plaintiff manufactured and sold 696,774 units of the bar type, and from 1934 to March 1, 1936, 238,161 units of the glass type unsealed. The bar type is advertised as covered by the patent in suit. It sells for much less than the glass type. By an interchange of licenses the plaintiff, the Holzhauer Products Corporation, and its licensees have enjoyed somewhat of a monopoly on the manufacture and sale of windshield heaters with vacuum cups as attaching means. This, supplemented by advertising and good salesmanship, has materially contributed to the commercial success of the device. It cannot be said, however, that the merit residing in a cheap, easily attached and detached heater, occupying a relatively small area of the windshield, was not a contributing factor. Another factor was the advent of the closed car, which increased the demand for inside heaters.

7. The defendants in 1929 began to manufacture and sell bar type heaters which they concede read upon claims 1, 2, and 8. It does not fully satisfy the requirements of claim 3. This bar type is manufactured in accordance with the teachings of U.S.No.1,852,599, issued to Max Zaiger, April 5, 1932, on application filed February 18, 1931, and U.S.No.1,861,041, issued to him May 31, 1932, on application filed June 22, 1931. Their glass type is based on two patents: U.S.No.2,003,028 to Louis Zaiger, May 28, 1935, and U.S.No. 2,006,005 to Max Zaiger, June 25, 1935.

### Conclusions of Law.

First, as to the date to which Cohen is entitled as the date of his invention. I agree that the invention cannot go back to the earliest mental conception. There must be a disclosure sufficient to enable one to reduce it to practice, such as a drawing or a model of the thing invented. Such a drawing was completed by February 8,

1925, and fully disclosed. The proceedings for a patent were filed within a reasonable time after that date. It follows that such references as bear a filing date subsequent to February 8, 1925, may not be deemed to anticipate.

The main defense to the claims in suit is that they do not call for invention, in view of the state of the art at the time Cohen entered. Plaintiff has laid stress upon the argument that it was not until it began to manufacture under the Cohen patent that the public indicated any readiness to receive windshield heaters. This argument loses force in view of the fact that defendants were over a year ahead of plaintiff in supplying the trade with bar type heaters with vacuum cup attachments, and the further fact that plaintiff manufactured and sold the glass type under other patents a year before it began to manufacture the bar type under Cohen's and since that day has manufactured more of the glass type than the bar type. While commercial success will turn the scales in doubtful cases (De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 51 S. Ct. 563, 75 L.Ed. 1339; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952; Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997) it does not relieve the plaintiff of its burden of proving that Cohen not only invented something new but that he was the first to invent it. Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502. It has been, I think, demonstrated that it was not new to provide a heating element in a case, especially if the case is to carry as equivalents those shown in the various forms of glass type heaters manufactured by plaintiff and others. Heating elements of the bar type were to be found in prior patents to Schonger and to Telfer, and of the glass type in Walter, Stubbs, and Murphy. Although they had been used long before Cohen's date as attaching means in the closely related art, it is true that there is no finding that prior to February 8, 1925, vacuum cups had been shown as means for attaching a device for heating windshields. The controlling issue, upon which the validity of this patent turns, is whether it called into play the ingenuity of an inventor to combine, if it can be deemed more than a mere aggregation, an old heating device with an old and widely known means of attaching objects to a glass surface.

The instant case, in my opinion, is controlled by Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 459, 79 L.Ed. 1005, where it was held that to add a flywheel to old mechanism to produce uniformity of motion did not amount to invention. The court observed:

"The patentees brought together old elements, in a mechanism involving no new principle, to produce an old result, greater uniformity of motion. However skilfully this was done, and even though there was produced a machine of greater precision and a higher degree of motion constancy, and hence one more useful in the art, it was still the product of skill, not of invention."

To the same effect see Hendy v. Golden State & Miners' Iron Works, 127 U.S. 370, 8 S.Ct. 1275, 32 L.Ed. 207; Office Specialty Mfg. Co. v. Fenton, etc., Co., 174 U.S. 492, 19 S.Ct. 641, 43 L.Ed. 1058; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278; Smith v. Magic City Kennel Club, 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 80, 54 S.Ct. 586, 78 L.Ed. 1131.

To paraphrase from the Altoona Case:

The inclusion of *vacuum cups* in any *device* to *secure means* of *attaching* it has so long been standard procedure in the field of mechanics that the use of them in the manner claimed by the present patent involved no more than the skill of the calling. (Words italicized substituted.)

What I have said above I believe to be equally applicable to all claims here involved. In each of them the claimed novelty was the application of vacuum cups as attaching means to heaters, all the elements of which, in the same combination, were found in the prior art. This, I conclude, did not amount to invention.

For a long time, the Patent Examiner agreed with this conclusion. It is difficult to reconcile the final grant with any reasonable belief that the patent was valid when issued.

Decree may be entered in each case dismissing the bill.