## CIRCLE F. MFG. CO. v. LEVITON MFG. CO.
### No. 39.

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1937.

Gifford, Scull & Burgess, of New York City (George F. Scull and H. H. Hamilton, both of New York City, of counsel), for appellant.

David P. Wolhaupter and Emory L. Groff, both of Washington, D. C. (Harry B. Rook, of Newark, N. J., of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is a suit for infringement of patent No. 1,931,621 issued October 24, 1933, to Carl M. Petersen, assignor to the plaintiff. The patent is for a "Fixture Switch" for electric lighting fixtures. It is of the type known as an outside canopy switch, which means that the switch mechanism is outside instead of inside the wall-plate or fixture "canopy," upon which the switch is to be mounted. The plaintiff's commercial embodiment of the alleged invention is a small, compact switch in which the switching mechanism is arranged entirely within the rotatable cap by the turning of which the switch is operated. There is a circular body of insulating material, such as bakelite, designated in the specifications as the base, and provided with a shank or stem. In the shank are channels to receive insulated electric wires whose ends extend through the base and are connected with line wire contacts of spring metal mounted thereon and adapted to be connected by a metallic bridging conductor mounted within the flange of the cap so as to operate as a quick make and break switch when the cap is rotated. The cap fits telescopically over the base, to which it is held by a pivot pin. Over the shank of the base is tightly fitted a support engaging member, consisting of a threaded metal sleeve. This is inserted in a hole in the canopy or wall-plate and is held in place by a nut screwed over the threaded sleeve from beneath.

Claims 5 and 7 are in suit. They read as follows:

"5. A fixture switch including an insulating base having a shank portion at the outer side, line wire contacts carried on the inside of the base, a cover rotatably mounted over the inner side of the base and having contact means cooperating with

said line wire contacts, a tubular holding member surrounding said shank, and a clamping member engaging said tubular holding member to secure the switch to a support."

"7. A fixture switch including an insulating base having line wire receiving passages, relatively fixed contacts mounted on one side of the base, a cover rotatably mounted on the base and carrying a contact for bridging said relatively fixed contacts, line wires led through said passages and connected to said relatively fixed contacts, and fixture attaching means carried by the base, said means including a tubular member fitted over the portion of the insulating base opposite the cover and also having the line wires passing therethrough, and a clamping member engaging the tubular member to secure the base to its support."

As against defenses of noninfringement and lack of invention these claims were held valid and infringed. The same grounds are urged by the appellant for reversal of the interlocutory decree.

For several years prior to the alleged invention, both plaintiff and defendant manufactured "inside" canopy switches of the type in which the switch mechanism is in a small insulating box located inside the fixture canopy or wall-plate, with the switch-operating knob projecting through a threaded metal stem which is inserted in a hole in the canopy and made fast by a nut. About 1932, either as a result of changes in style in lamp fixtures or a desire by manufacturers to economize in materials, a demand arose for a switch which would occupy less space inside the canopy or wall-plate. Almost immediately Petersen brought out the switch of the patent in suit, his patent application being dated May 18, 1932, and his first sales being made in July, 1932. The Petersen switch was at once accepted by the trade, although inside canopy switches are still sold in greater numbers for use where there is room inside the wall-plate or fixture canopy for a switch of this type. The defendant's outside canopy switch was put on the market in the summer of 1933, and after the defendant knew of the plaintiff's switch. It is substantially similar to the plaintiff's, though it has a somewhat different arrangement of line wire contacts and bridging member, by reason of which it is slightly smaller in size and the cap may be rotated in either direction, although only the clockwise movement operates the switch. The cap of the Petersen switch cannot be turned counter-clockwise. The defendant advertised its new switch in glowing terms, as "Another Leviton Achievement"; "The Smallest Canopy Switch Ever Made"; "The Answer to Many a Lamp Manufacturer's Prayer"; and "The latest and most important contribution to lamp manufacturing Leviton has yet made."

Despite such tribute to the merits of a switch substantially the same as the plaintiff's, it is contended that the patentee made no invention. It is conceded that Petersen's switch is not anticipated by anything in the prior art and that it has advantages over an inside switch when too little space is provided for use of the latter. But novelty and utility do not necessarily demonstrate invention. Hill v. Wooster, 132 U.S. 693, 701, 10 S.Ct. 228, 33 L.Ed. 502. The defendant argues that none was involved in devising the switch of the patent in suit; that Petersen merely selected for his switch mechanism and his attaching means structural features old in the art; and that such selection required only the mechanical skill of a designer, not the inspiration of an inventor. We think the contention must be sustained.

Petersen solved no long-existing problem which others had failed to solve. The problem was created by a change in style of lighting fixtures which resulted in leaving too little room inside the lamp-base or wall-plate for use of the old inside switch. It would seem to be an obvious solution to place the switch on the outside; and the Petersen switch was brought out almost at once after the new demand arose. Electrically, it is no better than the inside switch and functions exactly like it, the electrical mechanism is not substantially smaller, and the method of attachment is simply a reversal of the attaching means of the inside switch, that is, the threaded metal stem is inserted from above and the nut screwed on from below, instead of vice versa. Nor was the idea of an outside switch mounted upon a supporting plate or wall a new conception with Petersen. The patent to Persson, No. 1,471,631, discloses such a switch. His method of mounting was to attach the switch to the wall by means of screws concealed in the base. This would not have served for Petersen on account of the thinness of the canopy; but the idea of an insulating base with a

threaded shank is shown in Allen No. 1,508,636, and Kerwin No. 1,485,932 shows the insulation surrounded by a threaded metal sleeve. And, as already suggested, the inside switch itself was attached to the fixture canopy or wall-plate by means of a threaded metal stem and nut, through which the operating knob projected. Hence the selection of Petersen's attaching means should have been well within the skill of a designer versed in the art of electric switches.

In Petersen's device the switching mechanism lies wholly within the operating cover or cap. No prior switch had shown that precise structure, but Persson is not far removed from it. His switch mechanism lies within a rotatable outer ring topped by a fixed cover. It would scarcely seem to justify a claim of invention to convert Persson's rotatable ring and fixed cover into a unitary cap rotatable about a pivot pin. Nor is it important that Persson provided an outer and an inner ring in order to have operation of the switch when the outer ring was moved clockwise and no operation when it was moved counterclockwise. To make them integral, if rotation in one direction only was desired, would be obvious. In its manner of making and breaking the electrical circuit the Petersen switch added nothing to the teachings of the prior art. It is true that the patentee devised a compact, unitary structure adapted in form and size to meet the new demand for an outside switch, but it required no new electrical arrangement and it functions precisely like earlier switches. It appeared without any delay as soon as the demand arose. In Sachs v. Hartford Electric Supply Co., 47 F.2d 743 (C.C.A.2), which the appellee asserts is on all fours with the case at bar, Sachs succeeded in assembling all the switches, fuses and wires into one compact housing after several earlier attempts had failed. This fact overcame inherent doubts of invention based upon the apparent ease and inevitability of the changes he made. Page 745. There is no such experience of succeeding where others had failed to bolster Petersen's alleged invention. In our opinion it must be held to be the product of a designer's skill and to lack invention. See Mantle Lamp Co. v. Aluminum Co., 301 U.S. 544, 546, 57 S.Ct. 837, 838, 81 L.Ed. 1277; Wreal Cravat Holder Co. v. Lordds, Inc., 87 F.2d 313 (C.C.A.2).

Decree reversed.