## BACKSTAY MACHINE & LEATHER CO. v. ZENITE METAL CO.

(Circuit Court of Appeals, Seventh Circuit. July 19, 1923.)

No. 3261.

1. Patents ⟨⟩328—Schemmel patent, No. 51,804, held invalid.

Schemmel patent, No. 51,804, a design patent relating to upholstery, *held* invalid.

2. Patents ⟨⟩328—Schemmel patent, No. 1,226,600, claims 3 and 4, held invalid.

Schemmel patent, No. 1,226,600, claims 3 and 4, relating to a finishing welt for use in trimming automobile tops, etc., *held* invalid.

3. Patents ⟨⟩328—Schemmel patent, No. 1,226,600, claims 1, 2, 5, and 6, held valid and infringed.

Schemmel patent No. 1,226,600, claims 1, 2, 5, and 6, for a finishing welt for use mainly in trimming automobile tops, etc., *held* valid and infringed.

4. Patents ⟨⟩72—Claims for a finishing welt used in upholstering held not anticipated.

Claims for a welt having longitudinal parallel beads connected to a body, so as to permit the beads to be spread apart for the insertion of tacks and then to resume their close together positions, and thus to conceal the tacks, are not anticipated by the disclosed product of a patented machine, wherein two corded welts are sewed into a seam in close together positions, and only one of them is capable of being swung back and of then resuming its former position.

Appeal from the District Court of the United States for the District of Indiana.

Bill in equity by the Backstay Machine & Leather Company against the Zenite Metal Company. From a decree dismissing the bill, plaintiff appeals. Reversed and remanded, with directions.

Henry D. Williams, of New York City, William E. Dyre, of Washington, D. C., and Hervey S. Knight, of Chicago, Ill., for appellant.

Arthur M. Hood, of Indianapolis, Ind., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The appeal is from a decree of the District Court dismissing for want of equity appellant's bill charging infringement of United States patents to Schemmel, Nos. 1,226,600, May 15, 1917, and 51,804, February 19, 1918. Both relate to the upholstery art; the first being for a finishing welt for use mainly in trimming of automobile tops and bodies, furniture, and the like, and the second a design for same. The following figure is a perspective of the device:

To the left is the strip in normal position, *2* being the parallel raised cords or beads, so attached to the body that they may be spread apart, and, when the spreading force is removed, spring together, closing over

and concealing the tacks or other fastening agent driven through the body of the strip, as shown at the right of the figure, where the beads appear spread apart and the tacks 6 inserted.

Figure 4 of the device patent shows a cross-section of the strip or welt in place, the beads or raised parts 2 sprung back to normal position, concealing the inserted tack 6 whereby the welt is attached to the article.

The design patent strictly follows the lines of the normal strip or welt as shown. All six claims of the device patent were sued on. Of claims 1, 2, 5, and 6, claim 1 is typical:

"As a new article of manufacture a welt comprising a body, and longitudinally parallel beads superimposed on and connected with the body, the body being constructed and arranged to permit of the beads being spread apart and subsequently resuming their close together positions for the purpose set forth."

Claims 3 and 4 are combination claims for "the combination of an article, a welt"; the welt being described as in the other claims.

The District Court found both patents invalid, largely, if not entirely, as appears from the record, upon the opinion of the Circuit Court of Appeals of the First Circuit, affirming a decree finding both patents invalid, in an action where both were directly involved, just as here. Backstay Machine & Leather Co. v. Hamilton, 262 Fed. 411. The transcript of the record in the First circuit case was by stipulation before the District Court here, supplemented by further evidence for appellant, mainly of the commercial success of Schemmel's welt.

[1] As to the design patent, we unhesitatingly find that the conclusion reached was correct. Ornamental designs of parallel pipings or beadings such as shown are old, and there was evidence of long prior use of a strikingly similar design, as an ornamentation for certain parts of harness, whereby the design in question was, in our judgment, fully anticipated.

[2] With the conclusion reached as to claims 3 and 4 of the device patent we are likewise in accord. Whatever of novelty there is resides wholly in the welt itself. There is not the suggestion of a new or different result flowing from the combination of this welt with the article to which it is attached. Any one of numerous welts long in the art could be employed where this one is used, and when applied the combined result would be the same. Whatever difference there is between this and the other welts would be wholly in the welt itself, whereby in this it is more readily applied, and the tack or other fastening means more simply and effectually concealed.

[3] Respecting the other claims, however, we reach with much reluctance a conclusion differing from that as heretofore adjudicated in the First circuit upon practically the same state of facts—reluctant, not only because hesitating to disturb adjudications of District Courts in our own circuit, but also because of the consideration and the opposite conclusion reached by the courts in the First circuit.

The sartorial and upholstering industries have long shown ornamental pipings and beadings, and separate welts or strips for such use,

having such cording and piping, was old therein. There are those where the cording appears wholly as a matter of ornament, but unrelated to the concealment of the tack or other means whereby the strip is attached to the article. Some of these strips show flaps which are raised for the insertion of the fastening agent, and then the flap in turn is fastened down, either by tacks with ornamental heads, thus concealing the fastening tacks, or some sticking agent, such as Hagan, patent No. 303,840, 1884. But none of these show the novelty which resides in the Schemmel device, namely, parallel rows of cording or piping, adapted to be lifted up and apart from each other, for the convenient insertion between them of the tack and the then tendency of the parallel cords to resume their normal close together position concealing the tack or other fastening agent. In this the courts in the First circuit substantially agree, and the Circuit Court of Appeals, quoting from the opinion of the District Court, said:

"Concealed tack moldings are old, and have been made in various forms; but none of the devices that have been called to my attention, with a single exception, have embodied the characteristics of the plaintiff's device. The exception to which I refer is the product of a machine upon which a patent was granted to Alvin B. Felt, November 18, 1879, in United States letters patent No. 221,801."

It is true that in the opinion of the Court of Appeals it was said:

"We are not confined to a consideration of the patent to Felt only, but that we should consider the prior art as disclosed by the whole record."

However, nothing else in the prior art was referred to, and the opinion proceeds to quote with approval from the discussion of the Felt patent in the opinion of the District Court.

[4] We have carefully examined every device to which the evidence refers, and apart from the Felt patent find nothing whereby the claimed novel feature in Schemmel is anticipated or disclosed. The Felt patent is for an attachment to a sewing machine whereby corded welts are mechanically formed and inserted into a seam which joins fabrics. No novelty was claimed for the product, but only for the device whereby the seam was produced with its inserted cord or cords. But the contention is made that the product anticipates Schemmel's welt, or, in the light of Felt, that invention was not involved in its producing. Felt's product is shown in his Figure 4.

It was not designed to be a separate product to be thereafter attached to some other object or article. On the contrary, the product of Felt's attachment was a completed seam with the inserted ornamental cords or pipings. The fabric $D$ $D'$,  into the connecting seam of which the cords $F$ $E$ are inserted, as formed by means of Felt's attachment, involved a single operation, whereby the sewing machine forms the welts or cords and sews them into the seam whereby $D$ and $D'$ are joined. Felt had no problem of forming, as a commercial product, corded strips for thereafter attaching to other articles. He was concerned only with the operation of mechanically

forming the piping into the seams. If he had undertaken to make in this manner strips or welts for ornamental use on other articles, it is not likely this product would have been adapted to that use, since it shows seven thicknesses of material on one side of the seam where the fabric is joined, and but one thickness on the other. A strip of this kind would be but illy adapted to be used in the manner of ornamental welts and strips such as here involved. Besides, the projecting cords so produced are not inclined toward each other, but are both inclined in the same direction—sufficient, to be sure, to show two ornamental cords interposed in a seam, but not adapted to be spread apart for the insertion of a tack or other fastening means to hold the welt to the article, and automatically conceal the fastening means. This difference was referred to in the First circuit case. The Court of Appeals, quoting from the District Court opinion, said:

"It [Felt] discloses two parallel beads or cords superimposed upon a base and close together, only one of which is capable of being moved back from the other, and, on being released, resuming or tending to resume its normal or close position to the other bead or cord."

It was there further said (quoting from the District Court opinion) that to reverse this other cord, so the cords would incline towards each other, did not involve invention, and thereupon the claims were held invalid.

Even if Felt's device could have been reconstructed to produce parallel cords which would incline towards each other, it does not appear that there was occasion for it in the product he had in mind. For the purpose of interposing a cording in the seam, it was immaterial whether or not, if two of them, they inclined toward each other. There was no occasion for spreading them apart, and hence none for their normal inclination toward each other.

The utility of a product such as Schemmel's is conceded. It would no doubt have had equal utility in 1879, when Felt made his disclosure, and with the rapid growth of the automobile industry the demand for such a product became increasingly strong. Felt had made his revelation, and many others were in the same art in which Schemmel wrought. But to none of them occurred the "happy thought" of taking Felt's product and reversing one of the cordings or pipings, so that the two would incline toward each other, making of it a welt for application as indicated. From all that here appears it remained for Schemmel to do this, and the almost instant recognition of his contrivance in the extensive sale of it, which has rapidly grown to millions of feet annually for use on automobiles alone, to us strongly suggests the quality of invention in his conception.

We are forced to the conclusion that Felt did not anticipate, that invention was involved in the conception of the Schemmel device, and that claims 1, 2, 5, and 6 of this patent are valid.

Infringement being practically conceded, we conclude: (1) That the decree of the District Court should stand, in so far as it finds invalid patent No. 51,804, and claims 3 and 4 of patent No. 1,226,600; (2) that as to claims 1, 2, 5, and 6 of patent No. 1,226,600 a decree should

be entered finding the last-named claims valid and infringed, and decreeing relief accordingly.

The decree is reversed, and the cause remanded, with direction to the District Court to enter a decree in conformity herewith.