SCHILLER et al. v. ROBERTSON, Commissioner of Patents.

District Court, D. Maryland. September 14, 1928.

No. 1326.

Joshua R. H. Potts, of Chicago, Ill., George B. Parkinson and T. Bertram Humphries, both of Philadelphia, Pa., and John E. Cross, of Baltimore, Md., for complainants.

T. A. Hostetler, of Washington, D. C., and A. W. W. Woodcock, U. S. Dist. Atty., of Baltimore, Md., for the United States.

SOPER, District Judge. The complainants have filed a bill of complaint against the Commissioner of Patents, pursuant to the provisions of R. S. § 4915 (35 USCA § 63; Comp. St. § 9460), complaining that the Commissioner has wrongfully rejected two applications for patents, and praying for a decree directing him to issue patents thereon. The more important of the two applications relates to a method and an apparatus for sterilizing and purifying air by killing the bacteria therein. The other application relates to a method and an apparatus for transferring milk or other liquids from tank trucks by means of compressed air, which is sterilized before coming in contact with the liquids by the method disclosed in the first-mentioned application.

The discovery was made in connection with the business of the Scott-Powell Dairies in Philadelphia, where an attempt was made some years ago to employ compressed air as a means for emptying the tank trucks received at the central plant, so that the milk might be removed therefrom and raised to a point in the plant for pasteurization, bottling, etc. Pumps were then in use for this purpose, but their use was accompanied by an excessive agitation, which was injurious

to the milk. An experiment was made to ascertain if the compressed air method could be substituted.

The apparatus first devised consisted of (1) a compressor; (2) an 8-inch cylinder, connected therewith and used as an expansion tank; and (3) an 18-inch tank, in which the air was further expanded. The apparatus successfully served the purpose of elevating the milk, but it was found, upon tests, that the bacteria content of the air that was being used was much too great to permit its contact with the milk, as described.

After further change, the apparatus described in the patent specification was devised, and it was found to be efficient, not only to elevate the milk, but also to purify the air. The change consisted merely of introducing two additional tanks in the series. There were introduced (1) an expansion tank of 6 inches in diameter between the compressor and the 8-inch tank heretofore mentioned; and (2) a 10-inch expansion tank between the 8-inch tank and the 18-inch tank in the old apparatus. In its completed and final form, the system consisted of four tanks following the compressor, and being 6, 8, 10, and 18 inches, respectively, in diameter. An expansion valve was placed between each pair of tanks, which permitted the air to pass through an adjustable orifice, so that in its passage through the system the air was gradually expanded from the time that it left the compressor until it reached the 18-inch tank. From this point, after passage through an oil separator and a filter, the air was led by a pipe to the tank containing the milk to be lifted. The patent specification contains the following statement:

"Destruction of the bacteria is apparently effected by rapid expansion of the compressed air and heated air. We have not ascertained the exact degree of expansion required for destroying the bacteria, but find that, with the compressor raising the temperature of the air to 150° F. or higher, expansion until the temperature drops 80 degrees is sufficient. We prefer, however, to expand until the temperature drops to 40 degrees or slightly below. To effect that result, we prefer the form of apparatus disclosed in the drawings. The expansion tanks and the receiving tanks are 8 feet in length, the first expansion tank is 8 inches in diameter, the second 10 inches, the third 12 inches, and the receiving tank 18 inches, and the pipe leading from the compressor to the first expansion tank 2 inches in diameter. This apparatus is adjusted for a pressure of 45 pounds with the discharge closed. By use of the apparatus we produce air that is sterile and free from oil and other impurities. While we have described our invention as taking a particular form, it will be understood that the various parts of our invention may be changed without departing from the spirit thereof; and hence we do not limit ourselves to the precise construction set forth, but consider that we are at liberty to make such changes and alterations as fairly come within the scope of the appended claims."

While the bill of complaint in the first case refers to eight claims, in the application the controversy has been limited to Claims 5, 6, 7, and 8. Claim 5, which is typical, is as follows:

"The herein described method of sterilizing air consisting in compressing air until its temperature is about 150° F. and expanding it until the temperature drops about 80 degrees."

The evidence shows beyond any question that the substitution of the method of elevating milk by compressed air rather than by pump is of great benefit to the business. There is a very great saving of time in the operation, excessive agitation of the milk is eliminated, a material quantity of the milk lost in the former method is saved, and the operation is more cleanly and sanitary. The evidence shows that the cost of elevating the milk has been reduced from 44 cents per thousand pounds to 1.7 cents per thousand pounds. Since it is not possible to use compressed air, unless it is sterilized, the value of a cheap and easily operated apparatus is obvious.

It is also shown by the evidence that scientists do not understand why sterilization of the air should result from relatively slight compression followed by relatively slight expansion of the air. The degree of pressure used is described in the specification in terms of the resulting temperature. The evidence shows that the air in the compressor is subjected to a pressure of about 3 atmospheres, or 45 pounds, and is then expanded through the several tanks until, in the receiving tank, the pressure has been reduced to about $2\frac{1}{2}$ atmospheres, or about 37 pounds. During the course of this expansion, the temperature of the air is reduced from 150° F. to 70° F. It is fair to say that sterilization of the air by this simple apparatus came as a surprise to persons skilled in the art. Since the result achieved is of considerable value and utility, the discovery would seem to rise to the dignity of invention; unless it has been anticipated in the prior

art, or unless the disclosures thereof were such as to suggest it.

The authorities, consisting of prior patents and scientific tests, which were cited against the application in the Patent Office during the progress of the case, disclose that sterilization by heat and by pressure were well known. In every case, however, the degree of heat or of pressure, or the duration thereof, was greatly in excess of the means employed by the inventors. The evidence shows clearly enough that a temperature of 150° was not thought sufficient to sterilize air, but that it was necessary to employ a temperature of at least 250° to 300° F. for one or two hours, or at least, according to some of the authorities, for an appreciable period. The reference of Moore & Hewlett on Applied Bacteriology, cited by the Patent Office, states that, if dry heat is used, there must be a temperature of 320° to 350° F. for a half hour at least, and, if moist heat is used, the temperature must be 230° to 239° F. for at least 15 minutes.

If the subject is considered from the standpoint of pressure, the contrast between the current of prior authority with the disclosure of the application is equally surprising. The testimony of the experts at the trial, and the disclosures of the patents cited against the application, give substantially the same result. Some authorities state that the pressure must be as high as 600 to 700 atmospheres, while others state that 60 to 70 atmospheres, exerted for a period of 24 hours, will suffice. The various patents cited below indicate, with perhaps the exception of the Perkins patent, that no one had disclosed that so small a pressure as that employed by the plaintiffs would suffice. The theory, however, had been advanced, and supported by certain experiments, that bacteria could be destroyed by first subjecting the article in question to pressure and then releasing the pressure suddenly, whereby it was supposed that the bacteria were disrupted. But in all these instances the pressure was far greater than that employed by the applicants.

When the specific references are reviewed, it is clear that it was old to elevate liquids by the force of compressed air. The Engel patent, No. 276,756, of 1883, proposed a means of elevating beer by compressed air; Leedy, No. 298,990, of 1884, disclosed similar means for raising water. Neither contemplated sterilization of air. Walker, No. 625,280, of 1899, disclosed the use of sterilized compressed air for use in milk distribution.

Moore & Hewlett shows that even very great pressure had little effect on the vitality of the micro-organisms, but, if suddenly applied or released, may rupture some of the cells. The Baldwin patent, No. 920,611, of 1909, related to the sterilization of milk or other food by pressure from 200 to 300 pounds per inch, maintained for various periods from 30 minutes to several weeks, as being effective to destroy bacteria. Certain claims of the patent describe the process broadly as subjecting the substance to a pressure of the gas and then withdrawing or relieving the pressure. The substances to be sterilized, as indicated, were milk or other fluids and solids. There was no reference to the sterilization of the air. The Garpheide patent, No. 1,115,806, of 1914, related to the sterilization of articles—milk and other victuals—by constant high pressure and by the sudden discontinuance or intermittent action of the pressure. Neither the Baldwin nor the Garpheide patent referred to the sterilization of the gas.

The Larson patent, of 1924, shows the suspension of bacteria in a fluid of low osmotic tension, such as distilled water, and the subjection of the fluid to pressure by gas of high osmotic tension, and then releasing the pressure, whereby, he said, the sudden expansion of the gas within the organisms would disrupt them. He said that it is not necessary to kill the germ by heat. They are killed by suspending them in a suitable fluid, such as distilled water, containing carbon dioxide, under pressure. The carbon dioxide dissolved in the water passes into the bacteria, and, when the cells have been filled therewith, the pressure is suddenly released, causing the gas to escape from the fluid and from the bacteria, killing the latter by the sudden change in the tension. There is here of course some suggestion that a change in tension will destroy the bacteria, but the method suggested requires first the use of a fluid to dissolve the bacteria, and afterwards subjecting the fluid to the pressure of a gas.

None of the above references related to the sterilization of air by subjecting the air to pressure and then releasing the pressure. They referred in every instance to the sterilization of liquids or solids. Where the pressure is mentioned, it is vastly in excess of that employed by the patentee, and, even in the Larson case, the specification speaks of a high pressure.

There is only one cited patent which relates to sterilization of the air, namely, the patent to Perkins et al., No. 640,320, of 1900.

Upon it the tribunals of the Patent Office and the Court of Appeals of the District of Columbia seem chiefly to rely. This patent relates to a system of sterilization, drying and cooling air for use in preserving food or meat. As the Court of Appeals suggested, the device is complicated, and includes a furnace, a reheater, coolers, a low-pressure air cylinder, a high-pressure air cylinder, an inner cooler and expander, a primary and supplementary separator, and a storage or refrigerating chamber. In order that the subject-matter of the patent might be made clear, it was carefully explained by expert testimony, not produced in the Patent Office or Court of Appeals. It was shown that Perkins et al., so far as his disclosures went, depended for the sterilization of air upon the effect of heat at two points in the operation: (1) Where it passed through the furnace at the beginning of the operation; and (2) where the air, after having become contaminated by contact with the fruit and other foodstuffs, was passed into the high-pressure cylinder. The evidence indicates that the temperature of the air thus induced was only 150° F. which, according to the authorities, is insufficient for the purpose. The process, however, continued, and the air was released from the high-pressure cylinder into an expansion chamber. The tribunals of the Patent Office and of the Court of Appeals found that this was an anticipation of the plaintiffs' disclosure. It is, however, quite clear from the patent and the expert testimony that Perkins et al. had no idea that sterilization of the air was accomplished by first subjecting it to pressure and afterwards releasing it into the expansion chamber. On the contrary, one would suppose, from reading the patent, that sterilization was accomplished only by the application of pressure or heat. Indeed, the purpose of the release of the air into the expansion chamber was not to sterilize it, but to make use of it as a force to operate the machine.

The decision of the Supreme Court in Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658, lays down the doctrine that it is not sufficient, to constitute anticipation, that the device relied upon might, by modification, be made to accomplish the functions performed by the invention, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions. There must be so full, clear, and precise information that one skilled in the art, and acting in the then state of knowledge, can, from the patent, perform the process covered by the patent sought to be anticipated. See Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 S. Ct. 698, 46 L. Ed. 968. To anticipate a process, it is necessary, not only to show that the prior patent might have been used to carry out the process, but that such use was contemplated, or that it would have occurred to an ordinary mechanic in operating the device.

It is therefore the opinion of the court that the disclosures of the prior art did not anticipate or make obvious the discovery of the applicants, and that their process for the sterilization of the air is patentable. It is not clear, however, that the claims fairly describe the invention, even when interpreted in the light of the specification. The claims specify a method of sterilizing the air, consisting in compressing it until its temperature is 150° F. and expanding it until the temperature drops about 80° F. But it does not appear, from an examination of the application for the patent and of the testimony before the court, that the results obtained depended simply upon compression and expansion of the air within the range of temperature described. The testimony indicates that the unsuccessful experiment which preceded the discovery employed substantially the same range of pressure and temperature, and that the success of the later apparatus was due to the successive steps in expansion of the air, brought about by the intermediate tanks, which were then introduced into the series. It is conceded that the theory upon which the invention operates is not understood, but it seems likely that the successful result depended upon the additional tanks and expansion valves which were used. If it were possible to limit the claims by reference to the specific apparatus described in the application, they might be allowable as sufficiently definite and precise. But it is apparent, from the quotation from the specification above set out, that the applicants do not limit themselves to the precise construction set forth, but regard themselves as at liberty to claim any alterations thereof that fairly come within the scope of the claims. For this reason, and not for the lack of patentable invention, it is the conclusion of the court that the application for the first patent was properly rejected.

Claim 8 of the second application, which is typical, does not in terms specify sterilization of the air, but calls for an apparatus for transferring liquids, consisting of an air compressor, one or more expansion tanks, etc., whereby the air may be used to force the liquid from one receptacle to another. The disclosure does not appear to

involve any invention over the prior art. It was old to transfer liquids by an air compressor. As suggested in the opinions of the Patent Office and of the Court of Appeals, whatever invention is comprised lies in the sterilization of the air. At best there is merely an old combination of processes, whose only ingenuity resides in one feature, and not in the method by which the various elements of the combination coact together. Such a combination is not patentable. Langan v. Warren Axe & Tool Co. (C. C. A.) 184 F. 720; Backstay Machine & Leather Co. v. Zenite Metal Co. (C. C. A.) 293 F. 23.

Supplemental Opinion after Rehearing.

The aforegoing opinion having been placed in the hands of counsel, the case was set down for rehearing upon the application of the complainants, who desired to submit to the court claims additional to those contained in the patent application, as heretofore submitted to the court. Counsel for the complainants and counsel for the Commissioner of Patents were agreed that, under the following authorities, it is within the power of the court to pass a decree directing the Commissioner of Patents to issue a patent on claims presented to the court, although not included in the application as filed in the Patent Office, provided the new claims are germane to the subject-matter: Butterworth v. Hoe, 112 U. S. 50, 5 S. Ct. 25, 28 L. Ed. 656; Ingersoll v. Holt (C. C.) 104 F. 682; Merrill v. Ewing, 1917 C. D. 79; General Electric Company v. Steinberger (D. C.) 208 F. 699.

The complainants by supplemental petition submitted the following additional claims in connection with the first application for patent, which for purposes of convenience, will be called (a) and (b):

(a) The herein described method of sterilizing air, consisting in compressing air to approximately three atmospheres and then expanding it by several steps successively in minute streams to a pressure of approximately two and one-half atmospheres.

(b) The herein described method of sterilizing air consisting in compressing air to approximately three atmospheres and then expanding it step by step successively through a series of needle valves to a pressure of approximately two and one-half atmospheres.

These claims, in the judgment of the court, should be granted. They are not so broad as the claims originally submitted, but fairly describe the process disclosed in the application, which, as indicated in the aforegoing opinion of the court, constitutes a patentable invention.

A decree of the court will therefore be passed, authorizing and directing the Commissioner of Patents to issue a patent upon the first application, based upon claims (a) and (b) hereinbefore set out, but dismissing the bill of complaint in so far as it relates to the second application for patent.