## McGRATH HOLDING CORPORATION v. ANZELL.

No. 5191.

District Court, E. D. New York.

July 22, 1931.

Hammond & Littell, of New York City (Nelson Littell, of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit in which the defendant is charged with the infringement of letters patent No. 1,701,940, issued February 12, 1929, for an improvement in a tire mirror, and No. 1,719,821, issued July 9, 1929, for a rear-view mirror bracket.

The defenses to both patents are invalidity and noninfringement.

For purposes of simplicity, the former patent will in this opinion be referred to as the "tire mirror patent," and the latter the "hinge mirror patent."

The tire mirror was devised to be mounted on the spare tire on the side of the automobile, usually adjacent to the front fenders, so that the driver of the vehicle may see traffic conditions to the rear.

To effect the object of the invention, the patentee saw the necessity of securely fastening the device so as to prevent loss, looseness, or theft.

The mirror consists of a curved base designated 10 in the drawing, a post 12, adjustable head 14, and a reflector 16. The curvature of the base is for the purpose of enabling it to be fitted closely to the periphery of the spare tire. To attach the mirror to a suitable support, the base 10 is provided with eyelets 10b. A chain 30 is attached by two adjoining eyelets 10b, and the length of the portion 31 of the chain is such that it extends around and underneath the tire 32 and then upward in contact with the hook 34. The other eyelets 10b on the other side of the mirror base are similarly connected by a length of chain and are joined by a link or ring 36. The inventor then says: "The ring 36 is provided with a right angle projection 36a suitably perforated to receive a turnbuckle or screw 38. A hook 34 is suitably threaded to cooperate with the screw eyelet 38 and upon being turned the hook 34 may be drawn toward the ring 36 and the chain tightened about the tire. When the chain has been sufficiently tightened, the lock 40 may be hooked through the eye of the screw 38 and the perforation in the ring 30 to hold the screw in position and prevent loosening of the chain 30."

In the adjustment of the chain, all slack is to be taken up before the turnbuckle is tightened, and it is said: "With the present device the adjustment is extremely fine due to the screw thread on the turnbuckle and the mirror may be positively secured to any and all forms of spare tire mountings."

Claims 1, 2, 3, and 4 are in issue. Inasmuch as the defendant's device embodies not a turnbuckle but a hasp, it is important to determine the scope of the claims. The defendant urges that the prosecution of the application in the Patent Office compels the turnbuckle to be read as a necessary element of the combination.

The first action of the Patent Office was a rejection of all but original claim 9. In overcoming the objections, the applicant in the amendment of June 22, 1928 makes the following observations:

"One of the important features of this device is the particular means for securing the mirror to a spare tire. This includes a chain or other flexible means, a screw eye and an adjustable hook thereon. This hook will cooperate with any link in the chain and inasmuch as the end of the hook upstands to a greater height than the distance between the links, it is impossible to remove a link from the hook when the mirror is secured.

"Alperin (one of the prior patentees cited by the Patent Office) does not, in any manner, anticipate the particular features of the link chain or the adjustable hook on the screw eye, nor the locking means for locking the screw eye from turning."

In the following action of the Patent Office of September 20, 1928, certain claims are rejected on a reference to the Anzell patent, on the ground that no invention would be required to substitute the claimed chain and adjustable hook means for the fastening means of Anzell.

Replying to this action of the Patent Office, the applicant on September 28, 1928, in support of the amendment filed, wrote: "The applicant has provided a rear view mirror to be carried primarily on a spare tire of an automobile which is provided with a chain connection extending around the tire and under the rim, and with a turn-buckle for adjustably tightening said chain whereby the mirror can be firmly secured upon the spare tire and can be adjusted to take up any slack and, at the same time, the entire assembly, which constitutes a fairly expensive unit, can be locked into position to prevent theft thereof."

The Patent Office on October 9, 1928, again rejected claim 6, in which claim the applicant had sought to include broadly as an element "adjustable means to connect such flexible lengths of material," and as amended on September 28, 1928, "and means to prevent locking of said last named means in adjusted position."

Thereupon on October 12, 1928, the applicant, while protesting that claim 6 was patentable, requested cancellation of the claim.

Now original claims 5 and 8 of the application as filed, which are now claims 2 and 4 of the patent, specifically include the "turnbuckle" as an element. Original claim 7, now claim 3 of the patent, described this element as "adjustable means."

The history of claim 1 of the patent is curious. In the course of the amendments and prior to allowance, the claims referred to this element as "adjustable means," but after allowance the term "adjustable" was canceled, and "slack take-up" substituted, on the ground that "it is believed that 'slack take-up' is more properly definitive of applicant's mechanism which secures the flexible chains together, and in view of the repetition of the word 'adjusted' in the last line, the present change is made to present the claim in a more clear and less ambiguous manner. It is believed that the change does not involve the scope of the claim and it is considered, therefore, that the Examiner will permit the admission of this claim."

The question then is whether any of the four claims in suit can be read upon the defendant's structure. Certainly the hasp used by the defendant is not a turnbuckle in the sense in which that term is employed in the specification, nor can it be deemed the equivalent of the adjustable means disclosed in the specifications and drawings. The prosecution of the application forced the applicant to abandon a claim for any means for fastening the tire mirror to the spare, and accordingly he should not be permitted to read into the monopoly right granted him a broader combination than that which he accepted. At best, in view of the prior art, the patent is entitled to but a narrow construction.

I therefore conclude that none of the claims of this tire mirror patent is infringed by the defendant's devices in suit.

■ The hinge mirror patent discloses a mirror provided with a bracket for attachment to the hinge pin in the upper door hinge of an automobile, so that the mirror will be in position to reflect rear-view traffic conditions. Both claims of the patent are alleged to be infringed.

Claim 2 reads as follows: "A mirror bracket for a door hinge of the class described, comprising a rigid inverted L-shape portion having a downwardly opening recess therein, a second rigid L-shaped portion removably and telescopically secured to said inverted L-shaped portion to form a C-shaped clamp, and having an upwardly opening recess therein, said clamp receiving the ends of the usual hinge pin in said recesses, and means to secure a mirror adjustably to the bracket."

Comparing the defendant's structure (Plaintiff's Exhibit 4), one finds that though there are two L-shaped portions, as is set forth in the claim, nevertheless there is no telescopic connection between these two members, but, on the contrary, the adjustment of the two is secured by a bolt. This claim is so narrow that I think infringement of it is not proved.

■ Claim 1 is broader, and reads as follows: "In combination with a door of a closed automobile body with the usual hinge forward thereof having the usual hinge leaves and hinge pin, a rear-view mirror, and a bracket secured to said mirror, said bracket comprising a yoke having recessed sockets adapted to receive the ends of the hinge pin and means to clamp the yoke over the ends of the hinge pin."

This claim is in terms infringed, if the claim is valid, because the defendant does employ means to clamp the yoke over the ends of the hinge pin of the automobile. The defendant contends, however, that the claim is invalid as directed to an exhausted combination. It is said that the only possible novelty of plaintiff's device resides in the clamp structure, and that there is no material difference between the combination which includes this clamp and the same combination which includes any other clamp for the same purpose, and reliance is had upon Backstay Machine & Leather Co. v. Zenite Metal Co. (C. C. A.) 293 F. 23, and Langan v. Warren Axe & Tool Co. (C. C. A.) 184 F. 720. These cases and the law cited therein would be applicable providing defendant were able to show a combination of the claim with some different but equivalent clamp. The references cited hardly establish that position.

The Auto Car magazine, Defendant's Exhibit GG, shows a telescopic clamping device for supporting a reflecting mirror, but

it does not show a bracket, limited as is the bracket of claim 1. Nor does it appear that this device could effectively be clamped to the hinge of an automobile door.

The patent to Denoux, No. 1,521,508, was not pleaded and was admitted for the purpose of showing merely the state of the art. The inventor states that the arrangement is adapted for use on various accessories such as headlights on automobile cars. The patent shows what is known as a C clamp with corrugated jaws 12 and 13. It may be affixed to a windshield frame, but certainly could not effectively be affixed to the hinge pin of a door of an automobile. The danger of dislargement were it so affixed, would be very great.

Patent No. 1,223,962, to Godley shows a lamp mounting. There is a clamping member 12 of the C type intended to be applied to the windshield of a motor vehicle. Doubtless for this purpose the attachment is sufficient, but a windshield, as compared with the hinge of a door, is relatively stationary.

The C clamp is doubtless old as shown in a number of additional patents of the prior art, such as Christensen, No. 1,170,414, but this was intended also to be applied to a stationary support; to Cook, No. 518,733, to an invalid's bedstead or chair; to Shelverton, No. 576,165, to a sewing machine; to Sandberg, No. 1,061,328, for fixation to a stationary object such as the wall of a room, a chair rail, a picture rail, or the like. In the Automobile Trade Directory of October, 1920, a C clamp is shown, but no means disclosed of how it could be effectively applied to the hinge pin of an automobile door; the same is true of the Auto Car publication of March 23, 1923, and the Auto Dealer and Repairer of February, 1923.

Attachment devices of various kinds are shown in Bacon patent, No. 935,730; Wells patent, No. 1,485,102; Denman patent, No. 1,170,422; Place patent, No. 574,568; and the Auto Car publication of May 28, 1921. However, in none of these references is the combination of claim 1 disclosed.

I am unable, therefore, to find that the claim disclosed an exhausted combination. I think that the inventor successfully solved the particular problem that he presented to himself in seeking effectively to clamp a bracket supporting a mirror to a movable part such as the door hinge of an automobile, and at the same time avoid drilling, tapping, or the loosening of bolts or other mechanical operation. The door of the automobile is subject to considerable vibration, both while the car is in motion and when the door is opened and closed. Such vibrations would tend to dislodge the ordinary type of C clamp. This tendency to dislodgment the inventor overcame by his very simple but effective clamping means. His invention is not of a fundamental nature, but I think he made a praiseworthy contribution to the art, and to that extent is entitled to the monopoly granted by claim 1 of the patent. Hartford v. Moore (C. C.) 181 F. 132; Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co., 143 U. S. 284, 12 S. Ct. 443, 36 L. Ed. 154; General Electric Co. v. Hartman (C. C. A.) 187 F. 131.

The plaintiff may have a decree in accordance with the foregoing opinion.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.