## BORG–WARNER CORPORATION et al. v. GOODWIN et al.

### No. 3651.

District Court, E. D. Michigan, S. D.

June 20, 1945.

Harness, Dickey & Pierce, of Detroit, Mich., and Zabel, Carlson, Gritzbaugh & Wells, of Chicago, Ill., for plaintiffs.

Whittemore, Hulbert & Belknap, of Detroit, Mich., and Raymond L. Greist, of Chicago, Ill., for defendants.

LEDERLE, District Judge.

### Findings of Fact

1. This action arises under the Patent Laws of the United States. Plaintiff Borg-Warner Corporation is an Illinois corporation. Plaintiff David E. Gamble is a citizen of Illinois. Defendants George I. Goodwin and John F. Daukus are citizens of Michigan and reside in this District.

2. David E. Gamble filed a patent application on a clutch plate, Serial No. 147,936, in the United States Patent Office on June 12, 1937, and assigned it to Borg-Warner Corporation.

3. John F. Daukus filed patent application on a clutch plate, Serial No. 226,924, in the United States Patent Office on August 26, 1938. George I. Goodwin acquired from John F. Daukus an exclusive license under this application.

4. On November 29, 1939, the United States Patent Office declared an interference between these two patent applications, and on November 3, 1942, the Patent Office Board of Examiners in Chief held John F. Daukus to be the prior inventor.

5. David E. Gamble thereupon appealed this decision to the United States Court of Customs and Patent Appeals. Within the period fixed by the statute, Daukus filed notice in the United States Patent Office electing that further proceedings be conducted in accordance with the provisions of R.S. § 4915, 35 U.S.C.A. § 63. Plaintiffs filed the original complaint in this cause seeking solely a review of the Patent Office decision on the question of priority of invention. The appeal to the Court of Customs and Patent Appeals was dismissed.

6. Plaintiffs attempted to persuade the Patent Office to refrain from issuing the Daukus patent until the termination of the appellate proceedings, but were unsuccessful, and the Daukus patent in suit, No. 2,324,913, issued July 20, 1943.

7. After the issuance of the patent, Daukus notified plaintiff Borg-Warner and one of its customers that devices referred to as "Borglite" plates and sold under the trademark "Borglite" infringed this patent.

8. Leave being granted by the court on October 11, 1943, plaintiffs filed a supplemental complaint for a declaratory judgment in accordance with the provisions of Sec. 274d of the Judicial Code, 28 U.S.C.A. § 400, in which they sought to have all of the claims of the Daukus patent in suit declared invalid. With its answer to the supplemental complaint, defendants filed a counterclaim in which they alleged that the Borglite clutches infringed claims 4, 6, 13, 14, 15, 17, 19, 20, and 23 of the Daukus patent in suit. In the answer to the

counterclaim, the defendants again alleged that all of the claims of the patent in suit are invalid. The case was submitted on the Patent Office records and depositions taken since the Patent Office decision. Numerous exhibits were received in evidence but no oral testimony was taken.

9. In order to fully understand this rather complicated controversy it has been necessary to consider every part of the record and properly classify and evaluate the evidence therein. After giving full consideration to all of this evidence and the contentions of the parties it is clear that the plaintiff is entitled to the relief sought in the supplemental complaint and it is therefore unnecessary to discuss all of the other issues raised by the pleadings and proof. See Schilling et al. v. Schwitzer-Cummins Co., App.D.C., 142 F.2d 82, 84.

10. The opinion of the Board of Interference Examiners of the Patent Office is a part of the record. This opinion clearly describes the device disclosed in the Daukus patent as follows: "The invention in issue involves an improvement in the construction of a clutch disk or plate which is used as the driving element in a friction clutch, primarily for automobiles equipped with gear shifting mechanism, the ultimate object of the invention being to permit quicker shifting of the gears. As shown in the application drawings of the parties, the clutch plate or disk of each applicant consists of three concentric elements; first, a central hub member designed to be carried on the driven shaft of the clutch; second, an intermediate disk-like annular member surrounding and mounted on the hub member; and third, an annular series of generally arcuate cushion members attached to but extending radially beyond the intermediate disk to support a pair of annular friction facings. The arcuate cushion members are provided with transverse waves which resiliently hold the facings apart. Thus the friction plate is made up of a hub and two concentric zones comprising the intermediate plate mounted on the hub and the working or friction zone forming the outer peripheral margin of the plate. A distinguishing feature of the new clutch plate is that the cushion members are of thinner material than is an intermediate member on which they are mounted; that is, the cushion members are of less weight per unit area than the disk-like intermediate member, thus reducing the spinning inertia of the clutch plate, and permitting quick

shifting of the gears which is the ultimate object of the invention of the counts."

Another part of this opinion reads as follows:

"The interlocutory proceedings developed the two characteristics by which the counts essentially differ from the prior art. The first of these two features is that the hub, the intermediate member and the cushion elements are all separate and distinct members. The second coexistent feature is that the cushion elements are of less thickness or weight per unit area than the intermediate member.

"Perhaps the closest prior art is illustrated in Figure 4 of the Daukus patent, No. 1,777,399 which figure shows elements corresponding to those of the new friction plate, except that it does not explain whether the outer L-shaped cushion members 31 are thinner or thicker than the intermediate disk 30, or are of the same thickness. Because of this indefiniteness, the counts cannot properly be said to express only a difference in degree over what is shown in the patent."

11. Assuming that it could be said that the discovery that making the "L-shaped" cushion members of lighter materials would reduce the spinning inertia of the plate constituted patentable invention, the invention was not made by Daukus. Clutch plates embodying this concept were in use and on sale prior to 1930. The evidence of this prior use was not before the Patent Office. Apparently the combined efforts of counsel for Daukus and Gamble convinced the Patent Office that the first examiner was in error when he rejected all the claims of the Daukus application and stated: "The making of the segments of the prior Daukus patent (No. 1,777,399) thinner than the intermediate plate would not amount to invention since the thickness of these segments is of necessity determined by the amount of power to be transmitted by the particular clutch of a specific installation and would therefore be no more than a matter of design. No new or unexpected result is seen to be achieved by the making of the segments of the Daukus patent thinner than the intermediate member." (Page 10 of File Wrapper History of the patent in suit.) However, the record in this case proves beyond a reasonable doubt that it had been a common practice more than two years prior to the alleged invention to make the cushion elements of steel and thinner than the

intermediate member. There was no patentable invention disclosed in either the Daukus or Gamble applications.

12. Much of the difficulty in this case derives from the apparent inconsistency between the position taken by counsel for the plaintiffs in the Patent Office and the position taken in this court. In the Patent Office they insisted that plaintiffs were entitled to a patent based on the counts in interference. Now they contend that all the claims of the patent based on these counts are invalid for want of patentable invention. They now ask this court to direct the Commissioner of Patents to issue new claims on the Gamble application narrowly restricted to a device in which the so-called "cushion elements" are made of "tempered clock spring steel". Although the counts in interference did not refer specifically to "tempered clock spring steel", they did refer to "spring sheet metal" and this would necessarily mean that the metal would have to be tempered.

"Steel is a product, or, perhaps, more accurately, a species of iron, refined of some of its grosser elements, intermediate in the amount of its carbon between wrought and cast-iron, and tempered to a hardness which enables it to take a cutting edge, a toughness sufficient to bear a heavy strain, and elasticity which adapts it for springs and other articles requiring resiliency, * * *." Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 701, 46 L.Ed. 968.

In his original application (see Daukus File Wrapper, p. 68) Daukus stated: "In ordinary automotive applications the sections 17 ("cushion elements") should be made of high grade spring material as thin as possible to reduce the polar moment of inertia and still maintain sufficient strength to transmit the driving torque of the engine." "The idea of reducing the spinning weight of a clutch plate by cutting down the weight * * * in the peripheral portion of the plate (was) well known in the art, along with the advantages resulting therefrom." (Page 13, Patent Office Interference Record.) Substitution of "tempered clock spring steel" for the materials commonly in use for making the cushion elements was merely a mechanic's choice and did not amount to patentable invention.

## Conclusions of Law

1. An actual controversy existed at the time the supplemental complaint was filed, arising under the Patent Laws of the United States, and this court has jurisdiction in accordance with the provisions of the Declaratory Judgment Act. 28 U.S.C.A. 400; E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852; Trico Products Corporation v. Anderson Co., 7 Cir., 147 F.2d 721; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 'S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Maryland Casualty Co. v. Pac. Coal etc. Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450.

2. All of the claims of the Daukus Patent No. 2,324,913 are invalid for want of invention.

3. The court has authority to direct the Commissioner of Patents to issue a patent on new claims not included in the application if such claims are germane to the subject matter. In order to justify such action such claims must disclose a patentable invention, and where, as here, no such patentable invention is disclosed, such a judgment may not be entered. Schiller v. Robertson, D.C., 28 F.2d 301; Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502.

4. A judgment is being entered simultaneously herewith, declaring all claims of the Daukus Patent No. 2,324,913 in suit to be invalid and perpetually enjoining the defendants from prosecuting or threatening to prosecute any action charging infringement of that patent against plaintiff Borg-Warner Corporation, its agents, vendees, or others in privity with it, and dismissing plaintiffs' original complaint and defendants' counterclaim, without costs to any party.