314

George N. Goddard, of Boston, Mass., for appellant.

Herbert A. Baker, of Boston, Mass. (Alan B. Bagley, of Boston, Mass., on the brief), for appellees.

Before MORTON, Circuit Judge, and MORRIS and McLELLAN, District Judges.

MORTON, Circuit Judge.

This is a suit for infringement of patent to Wolff No. 1,787,098, dated December 30, 1930, for union suits. The defenses are invalidity and noninfringement. Upon final hearing the District Judge decreed in favor of the plaintiffs that the patent was valid and infringed, with the usual provisions for an injunction and accounting. The defendants have appealed.

The patent relates to a kind of underclothing in which the body and leg portions are combined into a single garment, called

*Rehearing denied Feb. 14, 1936.

a "union suit." Such garments had been in common use for many years before the Wolff application was filed. They must be so fashioned that, for toilet purposes, the seat portion can be let down or pushed aside. The Wolff patent deals with this part of the garment. In his construction the top of the seat portion is loose at the back of the waist and permanently fastened at the sides, and is given such fullness that it can be pulled down when the wearer goes to the toilet. It is retained in normal position by an elastic tape carried in a hem at the upper edge of it and fastened at the sides of the waist. The stretching of the elastic in connection with the fullness allows the seat portion to be pulled down and the pressure of the elastic returns it into position when the pull is removed. There are no buttons.

The evidence indicates that the Wolff suits at first were not well received commercially, but they have recently achieved marked commercial success. The difficulty with them when they first came out was that the elastic tape then in use did not stand up well under washing. It was a serious objection. Two or three years after the patent was issued a new kind of elastic was developed which lasts much better. It overcame the objection mentioned, and sales of Wolff garments rapidly expanded. The plaintiff's evidence indicates that they may dominate the market for children's wear.

The first question is whether the patent shows invention over the prior art. There was little controversy as to the facts. The oral testimony about the prior art was for the most part uncontradicted, and the prior patents speak for themselves. In very early forms of these union suits, which go back more than a generation, there was a seat flap, held up by buttons at the sides and back of the waist. The buttons were difficult for small children —many persons will remember little folks backing up to them with a request to be "buttoned up"—and it is said gave trouble when the garments were washed. As early as 1914, Greenewald, in a patent on this sort of garment, said: "The center button and button hole may be omitted, if desired, and means provided for drawing the free edge of the flap tight about the waist so it will not gap, the bottom edge 181 of the back section extending a substantial distance below the edge 391 (of the seat portion)." Page 2, lines 54–60, Greenewald patent, May 19, 1914. This

apparently refers to the use of an elastic, as something well known for such purposes. In 1916, Kline patented a union suit of which he said: "The object in view is the production of a seat construction which will remain snugly and smoothly closed, without the use of buttons or other fasteners," etc. The Kline garment was made of knitted material, the elasticity of which allowed the seat to be pulled out of the way for toilet purposes and returned it to position when the wearer stood up. The top edge of the seat portion was permanently fastened at the sides and was loose across the back, like Wolff's. The lower part, or "tail," of the body portion extended down inside the seat portion and was fastened at its sides, so that it did not bunch up when the seat portion pulled back to normal position. In 1916 Kassap patented a union suit in which the top of the seat portion was fastened at the sides and loose across the back and so baggy that it could be pulled down for toilet purposes. There was an elastic tape in the top of it which took up the fullness and assisted in holding the seat in normal position. This tape did not, however, extend all the way from side to side of the top, but only across the middle portion thereof, and a button was used on each side of the back, between the ends of the elastic tape and its side fastenings, to assist in holding up the baggy seat. Kassap's garment was made of unstretchable woven material like that shown in Wolff's patent. The baggy seat portion, above described, made so full that it could be pulled out of the way and retained in normal position in part by an elastic tape, appears to have been new. In the Kline patent, resiliency of the material was relied on unaided by any elastic or buttons, and there was no looseness or bagginess.

■ Wolff took the loose baggy seat of Kassap's patent and modified the support for it by running the elastic tape all the way across the top and doing away with the auxiliary buttons. The question is whether this constituted invention. At the argument there was some discussion whether the Kassap patent showed the tail of the body portion fastened at the sides, and as to the length of it under the seat. Kline had explicitly referred to this point in his patent saying that the tail was fastened laterally. Whether a shirttail should be longer or shorter does not involve patentable invention. Aside from the great commercial success of the Wolff garment, it would seem too clear for discussion that the change which he made did not involve invention. As the Patent Examiner said, "There would be no invention in merely increasing the length of the elastic band e of Kassap and securing the ends of same in seams s." The weight to be given commercial success on questions of invention depends on the circumstances surrounding it. It is said here that Wolff took the final step which converted previous failures into success, and produced something which was a great improvement in a common garment over anything previously known; and the District Judge so found. According to Wolff's testimony, however, he went to about half a dozen leading manufacturers of such garments shortly after receiving his patent; one or two of them tried the garment out; none of them cared to undertake the manufacture of it. One of them, a large concern, said bluntly that they would have nothing to do with any undergarment using elastic tape; that they had tried it out and it did not stand up. The first license under the patent was not given until 1933, about the time the improved elastic tapes came into use.

The merit of the invention is to be judged as of the time when it was made. The evidence does not indicate that at that time it was an important, nor perhaps a practical, step forward. The recent commercial success of the Wolff garments appears to be due to the improvement in elastic tapes. The change which he made seems to us to have been obvious; not taken by others because owing to the poor quality of elastic then obtainable there was no practical merit in it. It is hard to believe, though there is no direct evidence on the point, that Kassap did not try an elastic tape extending all the way across the top of the seat portion of his garment before he adopted the combination of elastic in the middle and buttons at the sides which he patented. When it appears that a patent if established is likely to create a monopoly in a thing in common use, and when the question is whether the forward step taken by the patentee involved invention, it is but just to the public that the patentee establish the presence of invention with a degree of certainty bearing some reasonable relation to the extent and burden of the monopoly which he claims. We are therefore constrained to disregard the

contrary finding of the District Judge and to hold the patent void for lack of invention.

It is unnecessary to decide whether the claim, in view of the proceedings in the Patent Office, would be entitled to a construction broad enough to cover a garment like the defendant's made of knitted tubing and not having separate front and back sections. See Smith v. Magic City Club, 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707.

The decree appealed from must be reversed, and the cause remanded to the District Court, with instructions to dismiss the bill. Costs to defendant in both courts.

The decree of the District Court is reversed, and the case is remanded to that court, with instructions to dismiss the bill; the defendant recovers costs in both courts.