## HOLZHAUER PRODUCTS CORPORATION v. ZAIGER.

### SAME v. SIGNAL MFG. CO.

### Nos. 4088, 4251.

District Court, D. Massachusetts.

July 27, 1936.

James A. Brickett, of Boston, Mass., Ralph W. Brown, of Milwaukee, Wis., and John K. Carter and Bradley L. Hill, both of Boston, Mass., for plaintiff.

Frederick A. Tennant and Nathan Heard, both of Boston, Mass., for defendants.

BREWSTER, District Judge.

These two infringement suits involve the same patents and were tried together. In each case the defenses were anticipation, noninvention, and noninfringement. The patents involved are Murphy, No.

1,378,604; reissue patent to Steinman, No. 17,821; and Holzhauer, No. 1,721,663.

Statement of Facts.

I. *Murphy, No. 1,378,604.*

1. On his application filed June 17, 1920, letters patent of the United States No. 1,378,604 issued to John W. Murphy on May 17, 1921. This patent related to an improvement in condensation preventing devices. The object of the invention was to provide an electrically heated device, to be attached to the inner side of automobile windshield or windowpane, the heating coil obtaining its power from the battery of the car or other suitable source of electricity, thus heating the member upon which it is attached to such an extent as to prevent rain and snow from depositing on the outer surface of the glass or frost forming on the inner surface of the glass.

2. The device consisted of a circular frame carrying a pane of glass. Within the frame is a concentric ring, or clamping member, between which and the frame is disposed a strip of packing material which, extending beyond the frame, is adapted to contact the windshield. The inner ring carried means for supporting in position a heating coil which extended around the periphery of the device. The ring and frame with the packing between were held together by ordinary bolts and nuts. Murphy discloses no specific means for attaching the device to the windshield, but says it may be mounted by means of suitable clamps. Only the first and second claims of the patent are involved in this controversy. The second claim is sufficiently illustrative:

"2. A device of the class described comprising a frame including a rim, a piece of glass carried by said frame, a strip of packing material fitted against said rim and extending beyond the edge of the same, being designed to bear against a plate of glass, a clamping member associated with the frame and retaining the packing against said rim, said member being provided with inwardly extending ears which serve to support and retain a heating coil in place."

3. It is shown by the file wrapper that Murphy's claims were several times rejected as involving no invention over prior references, and during the course of the proceedings in the Patent Office Murphy emphasized, as the novel feature entitling him to a patent, the means for retaining the packing material in position, including means for supporting and retaining the heating coil in position. All the elements of his simple device were old in the art. He could not have rightly claimed that he was the first inventor of transparent windshield defrosters or heaters, or that he first discovered the advantages of a dead air space in contact with a windshield. His elastic sealing strip was old, and the use of electric heating means and the means which he used were both old in the art. It is quite apparent that Murphy made no claim to any of these features. That he could not have successfully claimed them as novelty is seen from a consideration of prior patents, cited by the defendant, namely, Walter, No. 973,089 (1910); Camm, No. 1,117,128 (1914); Bidwell, No. 1,143,491 (1913); Haws, No. 1,304,479 (1919).

4. Walter's patent shows a heater applied to the outside of windows of electric cars or the like. Its purpose was to prevent accumulation of sleet and ice on the windows by covering a portion of the window and presenting its own heated surface to the action of the elements. The device had a circular metal frame, a strip of packing material carried by the frame and extending therefrom and being adapted to fit against the plate of glass, a clamping member for retaining the packing materials in position and for supporting the heating wires. One or more sheets of mica inside of a pane of glass were carried by the frame, the sheets being held by rivets at equal intervals about the frame, which rivets afforded a means of support for the heating wires which ran across the heater instead of around it, as in Murphy's patent. The specifications in Walter's patent deal at length with a device for attaching and adjusting the heating apparatus, with which we are not now concerned. Comparing the heating element with that of Murphy, the only difference relates to details of construction, except that Walter's was designed for application to the outside of the windshield, whereas Murphy's was intended to be attached on the inside. There is a possible difference in function, since in Murphy's device the heat was applied to the inside of the glass in order to melt the snow and ice on the outside, while

in Walter's invention the heat was applied to the outside of the windshield.

5. The basic idea of Murphy's alleged invention is found also in Camm. Camm described the following claim:

"The combination with a window framework, of a pair of transparent glass panes mounted therein side by side with an intervening confined space, a resistance wire interposed between said panes for the purpose of heating said panes, an insulating distance piece for separating said panes and supporting the convolutions of said resistance wire, and means for supplying current to said resistance wire."

Camm's invention involved a complete window, but he states in his specification that, "of course, it will be readily apparent that the entire window need not be thus heated so long as a sufficient portion of the window is provided with means to keep it clear."

One of the express objects of this invention was to provide a clarifying transparent media to be used in the windshields of automobiles, the use of which would prevent the deposit thereon of snow and sleet.

6. Bidwell, No. 1,143,491 (1915), is another patent disclosing a double window similar to Camm's, except that the heating element is incorporated at the bottom of the window, allowing the heated air to pass up through an air space between the panes, thereby preventing the accumulation of moisture on the windshield.

7. I find that in 1917 the Wetmore-Savage Company, a dealer in automobile accessories, advertised and sold a device for defrosting windshields of automobiles which, in appearance, resembled somewhat Murphy's device and embodied all the essential elements of it and in the same combination.

II. *Steinman, Reissue No. 17,821.*

1. On February 15, 1926, one Harry H. Steinman filed an application for letters patent of the United States, upon which a patent (No. 1,681,443) was issued August 21, 1928.

In a petition dated September 15, 1929, Steinman asked to be allowed to surrender these letters patent, which had been assigned to the No Frost Clear Vision Shield Company, and to receive a reissue patent for the same invention upon annexed specifications. Due to some irregularity, this petition was given a filing date of November 29, 1929. The patent was reissued October 7, 1930.

On the original application only two claims were allowed, and in the reissue patent three claims were allowed; the first claim being the same as in the original. The second and third claims, the only ones involved in this suit, were added in the reissue patent.

2. While the device is called an antifrost device and was designed for windshields of automobiles, it contains no heating element, nor was there any suggestion anywhere that a heating unit was to be used in connection with it. In the original specification, the device is described as "a separable frame having a flexible sealing member gripped intermediate the edges of said frame to contact with a surface against which the frame is positioned, and having vacuum cups removably connected to the device for fastening it to a smooth surface, the frame being demountable to permit interchanging a thin transparent sheet position therein and inserting other sheets of substantially equal thickness in lieu thereof."

In the specifications in the reissue patent it is stated that "an object of the invention is to secure a metal supporting frame for a transparent sheet and a sealing strip in contact with the window, with vacuum cups so connected with the frame as *to permit an unbroken contact of an endless sealing strip* carried by the frame with the window." (Italics supplied.)

Again, in his specifications accompanying his petition for reissue, Steinman states: "Of essential importance in achieving the function of my invention is the supporting of vacuum cups by a frame in such a manner as to permit an endless sealing strip being carried by the frame, with the cups spaced from this sealing strip so as not to interfere with the continuity of the strip, and this I secure by a projecting bracket portion upon each end of the supporting frame, in which bracket portion a vacuum cup is removably mounted."

3. There is nothing in the specifications accompanying the original patent indicating any necessity for an arrangement of the vacuum cups, so as to permit an unbroken contact of an endless sealing strip. It was to cover this arrangement that the two additional claims were added

in the reissue. The claim adequately illustrating the device is as follows:

"An anti-frost shield, comprising an outer frame consisting of a narrow strip of metal formed with a downturned surrounding flange, a transparent closing sheet fitted inside the flange of said frame, a sealing strip surrounding the edge of said transparent sheet inside said flange and projecting beyond said flange, means for detachably securing said sealing strip, offset bracket extensions upon opposite ends of said frame, and vacuum cups removably supported by said bracket portions in a position spaced from the flange of said frame and from said sealing strip, for the purpose set forth."

4. Apparently Steinman adopted an old principle that a dead air space between the windshield and his transparent sheet would keep the windshield clear of accumulation of frost, and, for the purpose of applying his device to a windshield, he used the vacuum cup, a well-known means of holding appliances to glass surfaces, as shown in Roberts, No. 641,893 (1900); Austin, No. 963,264 (1910); McLaren, No. 1,246,629 (1917); Hutchinson, No. 1,384,-727 (1921); Downing, No. 1,532,308 (1924).

Downing shows the use of vacuum cups in holding a glare shield to an automobile windshield.

5. In his affidavit Steinman states that his original specifications and claim were defective, in that they failed to secure the co-operative relationship between the vacuum cup and the other frame member; that it was shown, for the purpose of invention, that the sealing strip should be continuous and entirely surround the frame portion; otherwise it would not act as a frost shield.

6. On the defense of anticipation, the defendants rely upon the following patents: Baldwin, No. 1,078,765 (1913); Krafft, No. 1,119,177 (1914); Leighty and Krafft, No. 1,186,010 (1916); Raven, No. 1,288,677 (1918); Valade, No. 1,394,237 (1921); Stubbs, Br. No. 164,435 (1920); also Murphy, No. 1,378,604 (1921).

7. It is not necessary to consider in detail all of these patents. Generally, it may be said that they show one or more of the elements found in Steinman's alleged invention. I will, however, refer to Baldwin, No. 1,078,765. While Baldwin shows an outside snow shield which had among its objects the prevention of frost accumulation on windshields of automobiles, it included as one of its essential features an air chamber formed between the transparent pane of the device and the window to which it was attached. The inner face of the frame carrying the pane of glass was provided with packing rings, or gaskets, of rubber. If one had lifted out of Baldwin's device the inner base which provides a dead air chamber and attached it to the windshield with vacuum cups, he would have produced the Steinman device.

Referring to the results contemplated by the invention, Baldwin says:

"It will be noted that the construction of the inner end of the device provides an air chamber 31 between the pane 8 and the window or other transparent member to which my device is applied. The provision of this space prevents the difference in temperature between the apartment or space at the rear of the window and the temperature which exists in front of the pane 8 from producing condensation on and frosting of these surfaces."

8. The defendants cite three patents, applications for which were filed before Steinman's application and upon which patents were issued prior to his reissue application. These are: Reed, No. 1,635,-906 (1927); Norbeck, No. 1,630,208 (1927); Will, No. 1,694,676 (1928).

The patent to Reed covers an invention relating to an attachment for motor vehicles with particular relation to windshield attachment; its object being to adopt means, adapted to be removably secured in place, to prevent the accumulation of frost upon the windshield. His application showed a transparent panel providing a dead air space between the panel and the windshield, and the means of ready attachment to the window adopted by Reed were four vacuum cups, one at each corner of the rectangular frame.

It appears that one face of the frame was provided with a compressible cover or lining 12 which was adapted to contact with the windshield.

9. Norbeck's application also shows a window attachment for windshield. The only difference between it and Steinman's device was that the frame was composed

of rubber and held in place by a succession of vacuum cups passing around the frame.

Both Reed's and Norbeck's attachments were applied to the inside of the windshield and functionally did not differ from Steinman, although it was not clear that the so-called "sealing" element was unbroken in the case of Reed. The difference between Norbeck and Steinman appears only in the material of which the frame was composed and the number of vacuum cups employed.

10. Will's application disclosed an antifrost device for windshield, held by vacuum cups, which held a glass panel, mounted in a frame of flexible material which, when pressed against the surface of the windshield, held it securely in place by suction caused by a vacuum being created within the troughlike frame. As an auxiliary means of holding the attachment in place, four vacuum cups were provided, one at each corner of the frame. The particular object of the invention was to create a dead air space between the windshield and the panel, thereby preventing frost from accumulating on the portion of the windshield covered by the device.

11. The defendants question the title of the plaintiff to the Steinman patent. It appears that plaintiff's title is based upon an assignment from the No Frost Clear Vision Shield Company. In this assignment the whole patent is assigned subject to the following reservations:

"The No Frost Clear Vision Shield Company, hereby reserves the exclusive rights under the said above mentioned Letters Patents of manufacturing, selling, and/or using non-electrical heated antifrost shields, and licensing others to manufacture, sell and/or use non-electrically heated anti-frost shields, and full right of action under said Letters Patents for infringement by the manufacture, sale, and/or use of non-electrically heated anti-frost shields."

III. *Holzhauer, No. 1,721,663.*

1. On his application, dated March 12, 1928, which was a continuation of an application filed November 18, 1927, letters patent of the United States No. 1,721,-663 issued to Alois Holzhauer, Jr. This is the third patent involved in this suit, and relates to a heating attachment for windshields.

This patent shows the usual rectangular metal frame comprising two flanged telescoping members with the sealing strip inserted between the flanges at the bottom and the glass plate between the flanges at the top, arranged exactly as in the Steinman patent. Instead of using the usual heating coil, Holzhauer uses a straight wire passed back and forth either horizontally or vertically within the frame.

2. Four claims of this patent are involved; namely, claims Nos. 4, 5, 6, and 7. Claims Nos. 4 and 6 are as follows:

"4. In a glass pane heater the combination of a relatively thin casing having an open side for application to a pane, a plurality of spaced resistor elements extending across the casing and exposed to the pane through said open side, and a transparent closure for the opposite side of said casing."

"6. In a windshield heater for motor vehicles the combination of a plurality of resistor elements, means for supporting said elements adjacent the windshield and directly exposed thereto, said elements being so shaped as to avoid impairing visibility, and means including a transparent cover plate behind said elements for cooperation with the windshield to confine the heat generated by said elements."

The fifth claim differs from the fourth only in that it adds a resilient means for maintaining said elements taut, and the seventh claim provides for one electric resistor element instead of a plurality of resistor elements.

3. On April 6, 1931, Holzhauer filed an application for reissue of his patent, in which he stated under oath that claims 4, 5, 6, and 7 of said patent were drawn too broad and of such scope as to include combination of means and devices of which said patentee was not the original, or first, inventor or discoverer, and asked for revised claims, many of which were rejected by the examiner. Holzhauer appealed to the Board of Appeals in the Patent Office, and the Examiner's action was confirmed; thereupon the application for reissue was allowed to lapse.

4. On December 11, 1933, the plaintiff, as assignee of Holzhauer, filed a disclaimer which provided, with reference to claims Nos. 4, 5, 6, and 7, as follows:

"Your petitioners further disclaim from the scope of meaning of said claims numbered 4 and 5 of said patent, No. 1,721,663, any and all forms of 'pane heater' except those wherein the 'resistor elements' are 'spaced' from the 'pane' and laterally from one another, thereby to avoid direct contact thereof with the 'pane' and to spread the heat therefrom through the thin layer of air confined by the 'casing' against the 'pane,' whereby a portion of the 'pane' is heated substantially uniformly and indirectly by the layer of air thus confined.

"Your petitioners also further disclaim from the scope of meaning of said claims numbered 6 and 7 of said patent, No. 1,721,663, any and all forms of 'windshield heater' except those wherein the heat confining 'means' last recited in each of said claims includes a peripheral frame of angular cross section surrounding and supporting the periphery of the 'transparent cover plate,' a flexible strip projecting laterally from the periphery of said 'transparent cover plate' beyond said frame for contact with the 'windshield,' together with means for securing both said 'transparent cover plate' and said strip to said frame."

5. Against Holzhauer's claim, the defendants have cited several patents already considered; namely, Walter, Camm, Bidwell, and Murphy. They have also cited Bliss, United States No. 957,728 (1910); Chester, United States No. 977,930 (1910); Faubert et al., United States No. 1,473,029 (1923); and two British patents to Stubbs, Nos. 164,435 (1920) and 173,777 (1922).

It is enough to say of these additional references that Bliss and Chester relate to storm, or double, windows in which electric heating elements are incorporated. Faubert and Stubbs relate to windshield defrosters. Stubbs, No. 164,435, deserves further notice.

Stubbs' invention relates to a device for preventing the accumulation of moisture or frost upon windshields of automobiles. In his specifications he says:

"According to this invention, I provide upon one of the surfaces of the windscreen, preferably the front surface, a second sheet of transparent material, preferably glass, and heat the space between such second sheet and the main sheet of transparent material from which the screen is composed, by electric con-

ductors, placed at short intervals from one another across that portion of the wind screen which is covered by the said second sheet and preferably within the space between the two sheets, whereby the sheets of transparent material are also heated for the purpose set forth."

Between the two sheets of glass he shows a rubber packing "to provide a substantially air and water tight joint."

The second patent to Stubbs is significant only as showing the need of providing means for keeping taut the heating wires which expand when heated whenever straight wires are used instead of coiled wires.

6. From the evidence I find that windshield heaters or defrosters manufactured by plaintiff's licensees have met with commercial success. The commercial device, however, does not follow exactly the combination shown in any one of the patents involved in these suits, and in certain of them no sealing strip is used and no attempt is made to create a dead air space. The method of applying the vacuum cups as attaching means is not that disclosed in Steinman's illustrative drawing.

7. The defendant Max Zaiger manufactures and sells a windshield heater which substantially conforms to his United States patent No. 2,006,005, issued June 25, 1935.

The defendant Signal Manufacturing Company manufactures and sells a heater for automobile windshields substantially according to letters patent of the United States No. 2,003,028, issued May 28, 1935, to Louis Zaiger.

Both of these patents show a metal frame carrying supports for vacuum cups, which are the means provided for attaching the heater to the windshield. Inside the metal frame is a strip of rubber, which serves as a sealing strip and is also grooved to hold the glass panel. The heating element consists of coiled wires attached to metal strips at each end of the device, which wires are held in place by screws fastening through the metal frame and the rubber strip. The metal strips at the ends do not necessarily operate as springs to keep the wires taut, since defendants do not use straight wires.

### Conclusions of Law.

I. *Murphy's Patent.* I hold invalid the first and second claims of this pat-

ent. It would not be invention to modify Walter, No. 973,089, and Camm, No. 1,117,128 by the use of a coil of wire wound around the periphery of his frame, instead of wires running across the device. Nor was it invention to attach on the inside of the windshield of automobiles defrosters which earlier had been applied to the outside.

If these claims of the Murphy patent be limited, as the file wrapper indicated, to the method of holding the sealing strip in place, combined with means of supporting the heating coil, I would still rule that no invention was involved. It would not, in my opinion, call for the genius of an inventor to insert a strip of flexible material between a metal frame and a concentric metal ring, or clamp, and hold these elements in place by ordinary bolts and nuts.

Furthermore, this feature did not possess the requisite attributes of novelty in view of Walter's disclosure and the Wetmore-Savage device which had been on the market several years before Murphy's filing date.

But if the claims, properly limited, should be held valid, they were not infringed, inasmuch as defendants' devices do not embody features claimed by Murphy as sufficient to justify his patent.

II. *Steinman's Patent.* The defendants question plaintiff's title to this patent. Plaintiff holds an assignment which reserves all that the patent covers. The use of the Steinman device in connection with the heating element is not suggested by anything in the original or reissue application, and it is difficult to see what plaintiff acquired by the assignment unless it be an exclusive license to use the particular type of frame, sealing strip, and vacuum cups, in combination with other elements. Such an exclusive license would, no doubt, entitle the plaintiff to relief if the reissue is valid and infringed.

The defendants further contend that the reissue is invalid, as it was not granted for the same invention as was disclosed in the original patent.

The additional claims of the reissue patent relate to the same combination of frame, sealing strip, transparent sheet, and cups. The new claim only emphasized the co-ordinate relation of the cups to the frame, permitting "an unbroken contact of an endless sealing strip carried by the frame with the window."

This addition does not introduce a new element into the combination, but merely stresses a relationship of the various elements which did not appear in the original claims, although suggested as possible in the drawings and specifications. If it had been covered by the claim, of course, there would have been no need for a reissue.

■ It is no doubt well settled that the reissue must be for the same invention. Rancourt v. Panco Rubber Co. (C.C.A.) 46 F.(2d) 625; I. T. S. Rubber Co. v. Essex Rubber Co. (C.C.A.) 1 F.(2d) 780. But, as above indicated, I do not think the claims in the Steinman patent fall within these cases.

■■ It remains to be considered whether the claims of the Steinman patent, involved in these suits, are otherwise valid. It is plaintiff's contention that they cover a new combination of elements producing a dead air chamber, and means for attaching the frame to the windshield of an automobile. It has appeared that the principle of the dead air space was old, as well as the use of it as a method of defrosting windshields. Plaintiff's contention that Steinman produced results "nowhere produced before" is not supported by the evidence in the case. The combination of the metal frame and sealing strip with a transparent sheet within the frame was not new, and, as the Patent Office pointed out, it did not involve invention to utilize vacuum cups as a means of attaching the frame to the windshield. The use of such cups for that purpose was well known long before Steinman entered the field. The applications of other inventors, filed before Steinman's date, had revealed all that Steinman sought to appropriate as his own. Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 399, 46 S.Ct. 324, 70 L.Ed. 651; Minerals Separation North American Corp. v. Magma Copper Co., 280 U.S. 400, 402, 50 S.Ct. 185, 74 L.Ed. 511.

To take from Baldwin's patent the "inner base" of his snow shield and attach it to the inside of a windshield did not require the exercise of inventive faculty.

The improvement, if any, over Reed, Norbeck, and Will, resided wholly in the details of construction or differences in materials of which the device was made. These departures may have produced better results, but they do not warrant a patent. Altoona Publix Theatres, Inc., v.

American Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; Insulite Co. v. Reserve Supply Co. (C.C.A.) 60 F.(2d) 433; Kemper-Thomas Co. v. J. P. Gordon Co. (C.C.A.) 67 F.(2d) 478.

Even if it be said that these improvements had been adapted to new uses, they were not the creative work of the inventive faculty. They displayed only the expected skill of the calling and involved only the exercise of the ordinary faculties of the skillful mechanic. Powers-Kennedy Cont. Corp. v. Concrete, etc., Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278; Saranac Automatic Machine Corp. v. Wirebounds, etc., Co., 282 U.S. 704, 713, 51 S.Ct. 232, 75 L.Ed. 634; Premier Machine Co. v. Freeman (C.C.A.1) 84 F.(2d) 425, June 3, 1936.

While defendants' devices do not follow Steinman in structural arrangement for holding the vacuum cups, they clearly read upon the second and third claims of the patent to Steinman. They comprise a frame member with a transparent sheet fitted in said frame, a flexible sealing strip entirely around the frame, and supports for vacuum cups arranged in such manner as to permit an endless sealing strip being carried by the frame. My conclusion is that defendants' devices infringe the claims of Steinman, were they valid claims.

■ III. *Holzhauer's Patent.* Defendants' principal defense to this patent is that the disclaimer renders the claims invalid because it rewrites or revises them. That a patentee cannot, by disclaimer, add to his invention is well settled. Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., supra; Fruehauf Trailer Co. v. Highway Trailer Co. (D.C.) 54 F.(2d) 691.

The reason for this doctrine is that "he would in effect secure a new patent operating retroactively in a manner not permitted by the reissue statute and without subjecting the new claims to revision or restriction by the customary Patent Office procedure." Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., supra, 294 U.S. 477, at page 491, 55 S.Ct. 455, 461, 79 L.Ed. 1005.

■ The purpose of the statute (35 U.S.C.A. § 65) authorizing disclaimer of course is to enable the patentee to cut down his monopoly. I read the disclaimer as giving Holzhauer all he had before and something additional, and that the disclaimer is invalid, and therefore invalidates the claims here in suit. Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., supra.

The defendants argue further that the disclaimer cannot stand as valid because of the delay in filing it, citing Reed v. Cutter, Fed.Cas.No.11,645; Ensten v. Simon Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453; R. Hoe & Co. v. Goss Printing Press Co. (C.C.A.) 31 F.(2d) 565; Lowell v. Triplett (C.C.A.) 77 F.(2d) 556, 560.

It has appeared in this case that Holzhauer, at least as early as April 6, 1931, knew that his patent claimed too much, yet he did not file his disclaimer until December 11, 1933, after he had been unsuccessful in securing a satisfactory reissue. A delay of less than two years was sufficient to defeat a disclaimer in Ensten v. Simon Ascher & Co., supra. It is my opinion that the defendant's contention respecting the legal consequences of the delay is sound. If, however, the disclaimer was seasonably filed, and we regard it as operating to limit the scope of the claims, then the prior patented art, considered especially with reference to the Murphy and Steinman patents, would compel the conclusion that Holzhauer's contribution was not patentable because it lacked novelty and the exercise of inventive faculties.

■ Respecting all of these patents, it can well be said here, as was said by Judge Morton in Jordan Marsh Co. v. Wolff (C.C.A.) 80 F.(2d) 314, 315:

"When it appears that a patent if established is likely to create a monopoly in a thing in common use, and when the question is whether the forward step taken by the patentee involved invention, it is but just to the public that the patentee establish the presence of invention with a degree of certainty bearing some reasonable relation to the extent and burden of the monopoly which he claims."

To the same effect see Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502; Standard Water Systems Co. v. Griscom-Russell Co. (C.C.A.) 278 F. 703; Premier Machine Co. v. Freeman, supra.

So far as Holzhauer's patent covers means of attaching his device to the windshield, defendants do not use any such device, and, since defendants use helical

coil instead of straight wire, they have no occasion to use the means shown by Holzhauer for keeping the wire taut, and the means adopted by defendants for holding the glass and sealing strip are not those shown in any of the patents in suit.

It follows from the foregoing that the bills of complaint in both of the above suits are to be dismissed.